AMERICAN COUNTRY INSURANCE COMPANY, Plaintiff-Appellant, v. MARJORIE BRUHN, as Adm'r of the Estate of Kristeen Anne Kaufman, Deceased, *et al.*, Defendants-Appellees.

Second District   No. 2—96—0921

Opinion filed June 30, 1997.

Alvin R. Becker and Timothy M. Kelly, both of Beermann, Swerdlove, Woloshin, Barezky, Becker & Genin, of Chicago, for appellant.

Larry M. Amoni and Kathleen M. Krist, both of Law Offices of Larry M. Amoni, P.C., of Aurora, for appellees.

JUSTICE McLAREN delivered the opinion of the court:

The plaintiff, American Country Insurance Company, appeals from an order of the circuit court of Kane County which entered judgment in favor of the defendants, Marjorie Bruhn, administrator of the estate of Kristeen Anne Kaufman (deceased), and Todd Raymond Nebel, in a declaratory judgment suit after the close of the plaintiff's case. We reverse.

On December 17, 1988, while driving his automobile, Nebel struck and killed two pedestrians, Kristeen and Lee Kaufman, on West Highland Avenue in Aurora, Illinois. The police questioned Nebel about the accident in June 1989, but Nebel denied involvement. Nebel concealed his involvement in the accident until January 21, 1992, when he was questioned again by the police and admitted his involvement in the accident.

On February 18, 1992, the People of the State of Illinois indicted Nebel in a two-count indictment, alleging that Nebel committed the offense of reckless homicide in the deaths of Kristeen and Lee Kaufman. Ill. Rev. Stat. 1991, ch. 38, par. 9—3 (now 720 ILCS 5/9—3 (West 1994)). On May 6, 1992, the State amended its indictment to include a third count, alleging that Nebel committed the felony offense of leaving the scene of a personal injury accident. Ill. Rev. Stat. 1991, ch. 95¹/₂, par. 11—401 (now 625 ILCS 5/11—401(b) (West 1994)).

On May 6, 1992, Nebel entered a plea of guilty in the offense of leaving the scene of a personal injury accident. The assistant State's Attorney provided the court with the factual basis for the guilty plea:

> "If the State's witnesses were called, those witnesses would establish proof beyond a reasonable doubt that on or about December 17, 1988, this Defendant before you, Todd R. Nebel, committed the offense of leaving the scene of a personal injury accident, which is a Class IV felony, *** in that said Defendant intentionally failed to stop the vehicle he was driving after that vehicle was involved in an accident at 548 West Highland Avenue, in Aurora, Kane County, Illinois, in which Kristeen Kaufman and Lee Kaufman were killed as a result of that accident, and thereafter failed to report the accident to any police station or sheriff's office near the place where the accident occurred within three hours after the accident, and there was no physical incapacity of the Defendant which would obviate that duty."

Thereafter, the trial judge inquired, "Is this about what the State's evidence would show if we went to trial?" In response Nebel replied, "Yes."

On July 27, 1992, Bruhn commenced a three-count action against Nebel alleging that on December 17, 1988, while operating a motor vehicle, Nebel struck and killed Kristeen Kaufman. Count I alleged negligence, count II alleged wrongful death, and count III alleged intentional infliction of emotional distress. In August 1992, Nebel notified the plaintiff of the accident, but refused to provide a statement. The plaintiff undertook the defense of Nebel but filed a reservation of rights.

On March 30, 1993, the plaintiff filed a complaint for declaratory

judgment against Nebel and Bruhn. The plaintiff alleged that it issued an automobile insurance policy to Nebel that was in effect at the time of the accident. However, the complaint also alleged that it had no duty to defend or indemnify Nebel with respect to the death of Kristeen Kaufman because Nebel failed to comply with the notice and cooperation provisions of the insurance contract. The insurance policy at issue provides:

"PART E—DUTIES AFTER AN ACCIDENT OR LOSS

We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

A person seeking coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require, to physical exams by physicians we select."

On February 14, 1994, the plaintiff filed a motion for summary judgment in its declaratory judgment action. On March 16, 1994, Bruhn filed a response to the motion for summary judgment claiming that Nebel's notice in August 1992 was reasonable and timely under the circumstances because he had successfully concealed his involvement in the accident for three years. Bruhn also argued that judgment on the plaintiff's declaratory judgment action should be stayed because it was premature based on the underlying wrongful death claim. On June 14, 1994, Judge R. Peter Grometer denied the plaintiff's motion for summary judgment and stayed final resolution of the declaratory judgment action until the wrongful death action was resolved. The plaintiff filed an interlocutory appeal based on the court's decision to stay the declaratory judgment action. This court affirmed the trial court's decision in a Rule 23 order (271 Ill. App. 3d 1148 (1995)).

On December 7, 1995, Bruhn and Nebel caused a stipulated judgment to be entered in the wrongful death case. The judgment was entered against Nebel as to counts I, II, and III of Bruhn's complaint, in the amount of $25,000, plus costs. However, the judgment provided that the award could only be collected from whatever rights Nebel had in his insurance policy and not from Nebel's personal assets.

A bench trial based on the declaratory judgment action began on July 10, 1996. The parties stipulated to the admission of the following documents: the automobile insurance policy issued to Nebel by the plaintiff; Nebel's answer to an interrogatory; Nebel's indictment;

Nebel's oral guilty plea; Nebel's written guilty plea; the judgment order in the criminal case; the summons and complaint in the wrongful death claim filed by Bruhn against Nebel; and the judgment in favor of Bruhn in the wrongful death claim.

The plaintiff called only one witness, Arthur Siemers, who testified that he had been a claim representative for 30 years and had been employed by the plaintiff for the last 22 years. Siemers stated that Nebel was insured by the plaintiff on December 17, 1988. The policy required Nebel to provide the plaintiff with prompt notice of any accident. Siemers stated that Nebel first provided the plaintiff with notice of the accident on August 26, 1992, when Nebel called Siemers. While speaking with Nebel, Siemers filled out an accord form, which is used in the ordinary course of the plaintiff's business to record the first report of an accident. The accord form was admitted into evidence. Siemers asked Nebel for a recorded statement in order to assess liability for the accident, but Nebel refused to comply. Siemers recorded Nebel's refusal. This document was also admitted into evidence.

Nebel's attorney later told Siemers that Nebel had concealed the accident from the police for three years. Nebel's attorney sent Siemers copies of the police reports and some investigative materials prepared by the police. The police reports and investigative materials indicated that Nebel lied about his involvement in the accident when questioned by the police in June 1989, but later admitted his involvement when the police questioned him again on January 21, 1992. Nebel explained his concealment by saying that he listened to some people who gave him bad advice. The trial court admitted the police reports and investigative materials into evidence.

Siemers stated that he believed the plaintiff had policy defenses based on Nebel's late notice and lack of cooperation; therefore, Siemers dictated a reservation of rights letter, recommended that counsel be retained to file a declaratory judgment action, and referred the wrongful death suit to counsel for defense. Siemers also stated that, based on Nebel's late notice and refusal to give a statement, the plaintiff was unable to undertake a meaningful investigation of the accident.

On cross-examination, Siemers admitted that he did not view the scene of the accident or canvass the neighborhood looking for witnesses. Siemers further stated that the plaintiff did not undertake any investigation of the accident and never asked Nebel to undergo a physical examination. Siemers also stated that the summons and complaint he received from Nebel could constitute sufficient notice under the duty promptly to send notice of any legal papers in connection with an accident.

Siemers also stated that there were three basic areas that the plaintiff investigated when adjusting an insurance claim: damages, proximate cause, and liability. Siemers stated that the plaintiff would not have investigated the damages because there had been two deaths in the case. With regard to proximate cause, adjusters or outside investigators would ordinarily speak with neighbors or anyone who may have witnessed the accident, would get a weather report for the day, and then review the police report.

At the close of the plaintiff's case, the defendants moved for a finding pursuant to section 2—1110 of the Code of Civil Procedure (735 ILCS 5/2—1110 (West 1994)). Judge Melvin E. Dunn granted the defendants' motion, stating:

"[M]y feeling is that the notice was made properly, given the circumstances; that Mr. Nebel could not be expected to come forward and voluntarily admit to a criminal offense which could have led to long periods of incarceration.

\*\*\*

At any rate, I will grant the defendant's [sic] motion at this point on behalf of the estate and find that notice was sufficient under the circumstances and that there was no breach of the policy.

\*\*\*

With respect to the cooperation of that [sic]. There has been no showing that he failed to cooperate with any reasonable effort to obtain a statement."

The plaintiff filed a timely notice of appeal.

On appeal, the plaintiff first argues that the trial court erred by granting the defendants' motion for a finding at the close of the plaintiff's case. The plaintiff claims that it established a *prima facie* case of late notice and failure to cooperate because Nebel failed to provide notice until over three years after the accident and refused to provide a recorded statement to the plaintiff regarding the accident. The defendants claim that the plaintiff failed to established a *prima facie* case of late notice and failure to cooperate. The defendants claim that Nebel had a justifiable excuse for the delay of notice because he feared incarceration. Further, the defendants argue that the plaintiff failed to establish prejudice.

●1 Pursuant to section 2—1110 of the Code of Civil Procedure, a defendant may move for judgment in her favor at the close of the plaintiff's case. 735 ILCS 5/2—1110 (West 1994). In deciding a section 2—1110 motion, the trial court must first determine whether the plaintiff has presented a *prima facie* case. *Kokinis v. Kotrich*, 81 Ill. 2d 151, 155 (1980); *Conoway v. Hanover Park Park District*, 277 Ill.

App. 3d 896, 899 (1996). If the plaintiff has failed to present a *prima facie* case, the trial court must grant the defendant's motion. *Kokinis*, 81 Ill. 2d at 155. If the plaintiff has presented a *prima facie* case, the trial court must weigh the evidence, including the evidence favorable to the defendant, and determine whether sufficient evidence remains to establish the plaintiff's *prima facie* case. *Kokinis*, 81 Ill. 2d at 154-55. If sufficient evidence does not remain to sustain the plaintiff's burden, the trial court must grant the defendant's motion. *Kokinis*, 81 Ill. 2d at 155. We will not disturb a trial court's decision to grant a section 2—1110 motion unless it is against the manifest weight of the evidence. *Kokinis*, 81 Ill. 2d at 154. A decision is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the ruling is unreasonable, arbitrary, and not based on the evidence. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 242 (1996).

■ An insured's duties are defined and controlled by the terms of the insurance contract. *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 191 (1991). The duty to provide notice is a reasonable requirement in an insurance policy. *Barrington Consolidated High School v. American Insurance Co.*, 58 Ill. 2d 278, 281 (1974). An insurance company is justified in denying coverage to an insured who fails to comply with the notice provision contained in the insurance policy. *Allstate Insurance Co. v. Hoffman*, 21 Ill. App. 2d 314, 324 (1959). The purpose of the provision is to afford "the insurer an opportunity to make a timely and thorough investigation and to gather and preserve possible evidence." *Barrington Consolidated High School*, 58 Ill. 2d at 281. Illinois courts have interpreted notice provisions as requiring the insured to notify the insurance company within a reasonable time, considering all the facts and circumstances of the case. *Barrington Consolidated High School*, 58 Ill. 2d at 281. Further, it is well settled that the insurance company need not prove that it was prejudiced by the lack of notice before it can validly deny coverage. *General Casualty Co. v. Juhl*, 283 Ill. App. 3d 376, 382 (1996). Rather, prejudice is only one factor in determining whether notice was reasonable. *American States Insurance Co. v. National Cycle, Inc.*, 260 Ill. App. 3d 299, 311 (1994). The other factors to consider are (1) the insured's sophistication regarding insurance policies; (2) the insured's awareness that an occurrence as defined under the terms of the policy has taken place; and (3) the insured's diligence in ascertaining whether policy coverage is available. *American Family Mutual Insurance Co. v. Blackburn*, 208 Ill. App. 3d 281, 288 (1991).

Thus, a lengthy delay in providing notice is not an absolute bar

to recovery under an insurance policy requiring notice. *McFarlane v. Merit Insurance Co.*, 58 Ill. App. 3d 616, 619 (1978). In certain circumstances, delays in providing notice are excusable and will not bar coverage. *McFarlane*, 58 Ill. App. 3d at 619. However, delays in providing notice are excused only when the insured's delay was reasonable under the circumstances. For example, lengthy delays in providing notice are excused when the insured did not reasonably believe that the insurance policy covered the occurrence in question (*Allstate Insurance Co. v. Carioto*, 194 Ill. App. 3d 767, 780 (1990) (2$\frac{1}{2}$-year delay excused because a psychologically disturbed 19-year-old could not have reasonably known that his stabbing of a claimant on a Chicago street would have been covered by his mother's homeowner's policy)) and when an insured reasonably relied on her husband's assurances that he made arrangements to notify the insurer (*McFarlane*, 58 Ill. App. 3d at 619 (13-month delay excused because husband repeatedly told insured that he sent a copy of the insurance policy to their attorney and the insured promptly provided notice when she learned of her husband's deception); see also *Grasso v. Mid-Century Insurance Co.*, 181 Ill. App. 3d 286, 290 (1989) (two-year delay excused because insured, who was involved in an accident while driving her boyfriend's jeep, did not reasonably believe the accident was covered by her father's excess coverage insurance policy); *Brotherhood Mutual Insurance Co. v. Roseth*, 177 Ill. App. 3d 443, 449 (1988) (two-year delay excused because insureds did not reasonably believe that an accidental shooting which occurred outside of their home would be covered by their homeowner's policy and they did not reasonably believe that their friends would file a late claim)). However, lengthy delays in providing notice are not excused when the delay is caused by the insured's negligence (*Equity General Insurance Co. v. Patis*, 119 Ill. App. 3d 232, 237 (1983) (4$\frac{1}{2}$-month delay not excused when an insurance agent failed to notify his malpractice insurer of a malpractice claim against him and offered no reason for the delay); *City of Chicago, v. United States Fire Insurance Co.*, 124 Ill. App. 2d 340, 345 (1970) (five-year delay not excused where the insured failed to provide notice of a tort claim because it misfiled the insurance policy in question)) or when the insured should have known that notice was required under the terms of policy (*General Casualty Co.*, 283 Ill. App. 3d at 381 (7$\frac{1}{2}$-month delay not excused when interrogatory revealed that the plaintiffs were seeking damages in an amount which would trigger coverage under the insurer's excess coverage policy)).

■ In the instant case, it is undisputed that on December 17, 1988, Nebel knew he was involved in an accident. It is also undisputed

that Nebel knew that the accident was covered by the plaintiff's insurance policy and intentionally failed to notify the plaintiff of his involvement in the accident until August 1992, approximately three years and eight months later. Nebel's only explanation for the delay is that he feared incarceration. We do not believe the delay is reasonable under the circumstances of this case. Nebel's behavior was that of a felon, not a reasonable person. A reasonable person would have immediately reported the accident to the police and promptly notified the plaintiff. The defendants cite no case that supports Nebel's claim that fear of self-incrimination is a valid excuse for the failure to provide notice under the terms of an insurance contract. We note that, although the facts are not identical, *Exline v. Exline*, 277 Ill. App. 3d 10, 13-14 (1995), negates Nebel's fear and supports the proposition that an insured's communication to his insurer regarding an accident is not discoverable because it is privileged. Thus, Nebel has only given a reason, not a valid excuse, for his deliberate failure to notify promptly. After reviewing the record, it is clearly evident that the plaintiff established a *prima facie* case of breach of the notice provision.

We also determine that it is clearly evident that Nebel breached the cooperation clause. "The basic purpose of a cooperation clause is to protect the insurer's interests and to prevent collusion between the insured and the injured party." (Emphasis omitted.) *Waste Management*, 144 Ill. 2d at 191. The cooperation clause in this case imposed a duty upon Nebel to "[c]ooperate *** in the investigation, settlement or defense of any claim or suit." It cannot seriously be contended that Nebel did not breach this duty when he refused to provide a statement regarding the accident to the plaintiff and then entered into a stipulated judgment, which admitted liability but provided that damages could only be collected from the plaintiff. After reviewing the record, it is clearly evident that the plaintiff established a *prima facie* case of breach of the cooperation provision.

The defendants argue that the plaintiff failed to present any evidence that it was prejudiced by Nebel's alleged failure to provide notice. In fact, the defendants claim that there is evidence that the plaintiff was not prejudiced. The defendants support this claim with evidence that the plaintiff was provided with police investigation reports and statements and failed to undergo any investigation after it learned of the accident. However, the defendants' argument that the plaintiff was not prejudiced is speculative. If Nebel had provided the plaintiff with notice promptly after the accident, the plaintiff could have investigated while the information was fresh in the minds of potential witnesses. Further, if Nebel would have cooperated by

giving the plaintiff a recorded statement, the statement could have led to a defense to Bruhn's tort claim. The defendants have not established that had the plaintiff been given prompt notice the discovery of evidence would have been no different. Even if there were merit to the defendants' position, prejudice is not dispositive of the issue of whether a policy is voided for lack of notice. *General Casualty Co.*, 283 Ill. App. 3d at 382.

The defendants claim that the plaintiff must establish prejudice to deny coverage based on a lack of cooperation. However, in this case, such an assertion is absurd. The only way the plaintiff can prove prejudice caused by the lack of cooperation is to know what Nebel's statement would have revealed. Since Nebel refused to give the plaintiff a statement, the plaintiff cannot know how it was prejudiced. When an insured completely fails to communicate with the insurer regarding an accident, "[a] violation of [the cooperation] provision is patent." *Safeco Insurance Co. v. Treinis*, 238 Ill. App. 3d 541, 549 (1992). Further, the defendants' citation to *M.F.A. Mutual Insurance Co. v. Cheek*, 66 Ill. 2d 492 (1977), is not persuasive because the insured in that case timely corrected a false report he made to the insurer. In the case at bar, Nebel never provided a statement regarding the accident.

The defendants argue that, even if the plaintiff established a *prima facie* case, sufficient evidence did not remain to sustain the plaintiff's burden after the trial court considered all the facts. The defendants note that Siemers, the plaintiff's employee, admitted that notice regarding the wrongful death suit was reasonable. After reviewing the transcript, it is apparent that Siemers was discussing the duty of the insured promptly to notify the plaintiff of any legal papers. Thus, Siemers' statement does not support the defendants' claim that Nebel provided reasonable notice of the accident.

Finally, the defendants argue that public policy considerations strongly favor their position. The defendants assert that an innocent third party should not suffer due to an insured's noncompliance with his insurance policy. The defendants support this argument by citing section 7—601 of the Illinois Safety Responsibility Law, which requires mandatory liability insurance for all drivers. 625 ILCS 5/7—601 (West 1994). The defendants claim that, if an insured can frustrate coverage, the statute cannot serve its purpose of protecting the rights of innocent third parties.

We disagree with the defendants and, instead, believe that the public policy considerations militate strongly against coverage in this case. The premise behind the defendants' argument is that one has not sinned if one is not apprehended or found out. In this case Nebel

hid his involvement in the accident from the police and the victims' representatives for more than three years. Then Nebel and Bruhn stipulated to $25,000 in damages which could only be collected from the plaintiff's insurance coverage. We know of no public policy that promotes subterfuge and allows an individual to profit from the concealment of a crime, nor do we deem it appropriate to create one. Further, the law should not condone actions which conceal torts, crimes, and other breaches of ethics and morality. Thus, after reviewing the record, we determine that the trial court's decision to grant the defendants' motion at the close of the plaintiff's case was against the manifest weight of the evidence. Accordingly, the trial court erred by granting the defendants' motion in their favor at the close of the plaintiff's case.

■ Finally, the plaintiff urges this court to reverse the trial court's decision to deny its motion for summary judgment. The defendants argue that this decision is not reviewable because the summary judgment decision has merged into the final judgment that granted judgment in the defendants' favor after the close of the plaintiff's case. However, the merger doctrine does not apply in this case because a complete trial was not conducted. See *Bransky v. Schmidt Motor Sales, Inc.*, 222 Ill. App. 3d 1056, 1062 (1991).

We determine we have the authority to review this issue in the interest of judicial economy. The facts in this record are uncontroverted, and the issues are essentially questions of law. It seems apparent from the arguments made in the defendants' brief that they believe that all the evidence that might have been presented in this cause was presented during the plaintiff's case in chief. If that is correct, then judgment should have been entered for the plaintiff at the close of the plaintiff's case in chief because the defendants would not have presented any additional evidence. See 134 Ill. 2d R. 366(a)(5).

In the interest of judicial economy, we order that the defendants indicate if there is any evidence that might have been presented had the court denied the motion for a directed finding. If there is additional evidence, the defendants shall make an offer of proof in writing within 21 days of the filing of this disposition, and the court will then determine if remand is necessary or whether judgment should be entered in favor of the plaintiff.

The judgment of the circuit court of Kane County is reversed.

Reversed.

GEIGER, P.J., and INGLIS, J., concur.