**THE HOME INSURANCE COMPANY OF ILLINOIS, Plaintiff–Appellant,**

v.

**ADCO OIL COMPANY, Defendant–Appellee.**

No. 98–1055.

United States Court of Appeals, Seventh Circuit.

Argued May 27, 1998.

Decided Sept. 4, 1998.

Robert M. Chemers, John M. McGregor (argued), Pretzel & Stouffer, chicago, IL, Stanley M. Ward (argued), Norman, OK, for Plaintiff–Appellant.

E. Vance Winningham (argued), Winningham & Stein, Oklahoma City, OK, for Defendant–Appellee.

Before BAUER, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

EASTERBROOK, Circuit Judge.

Adco Oil Company has not fared well in the market for legal services. In 1988 it hired attorney Michael J. Rovell to sue Guy Taylor and his law firm for malpractice. By outward appearances Rovell did a good job. After a jury trial a judgment for $120 million was entered in Adco's favor. But Adco never saw a penny of that judgment and Adco now has filed suit accusing Rovell of malpractice. The complaint alleges that without Adco's consent Rovell made an agreement with Adco's co-plaintiff and adversaries that left Rovell with $265,000 in fees and Adco with nothing. Rovell has since filed a petition in bankruptcy (he is the debtor in possession in a Chapter 11 reorganization). Adco wants to collect from Rovell's malpractice carrier, The Home Insurance Company. Rovell has done his best to frustrate Adco. He refrained from notifying Home of Adco's malpractice suit, and its claims-made policy expired before Home learned of the proceeding. Rovell also ignored the adversary action Home initiated in the bankruptcy case. Following this default Bankruptcy Judge Ginsberg entered a declaratory judgment that Home need not defend or indemnify Rovell.

Adco contends, however, that the policy remains available, faulty notice and default judgment notwithstanding. Adco concedes that Rovell did not comply with the policy's notice provision but insists that this does not matter. Illinois (whose law, the parties agree, controls) prevents injurers and their insurers from destroying the "vested rights" of injured parties. *France v. Citizens Casualty Co.*, 400 Ill. 55, 79 N.E.2d 28 (1948); *Scott v. Freeport Motor Casualty Co.*, 392 Ill. 332, 64 N.E.2d 542 (1945); *Reagor v. Travelers Insurance Co.*, 92 Ill.App.3d 99, 47 Ill. Dec. 507, 415 N.E.2d 512 (1st Dist.1980). Adco contends that, as a result, Rovell's decision to conceal Adco's claim from Home may not be a basis for denying coverage. For its

part, Home observes that Illinois law permits insurers to condition indemnity on timely notice of casualties. E.g., *American Country Insurance Co. v. Bruhn*, 289 Ill.App.3d 241, 224 Ill.Dec. 805, 682 N.E.2d 366 (2d Dist. 1997). Carrying Adco's reasoning to its logical conclusion would foreclose enforcement of notice requirements, if it would not abolish claims-made policies, though Illinois law permits both. See, e.g., *Graman v. Continental Casualty Co.*, 87 Ill.App.3d 896, 899, 42 Ill. Dec. 772, 409 N.E.2d 387, 390 (5th Dist.1980). The district court agreed with Adco's arguments and granted summary judgment in its favor. 965 F.Supp. 1147, 987 F.Supp. 1057 (N.D.Ill.1997).

First we must inquire whether the district court had subject-matter jurisdiction, a topic the judge did not explore. Home invoked the diversity jurisdiction. 28 U.S.C. § 1332. Home and Adco are of diverse citizenship, and the amount in controversy exceeds the jurisdictional minimum. But Home's dispute with Adco arises out of its policy with Rovell, and the normal alignment of parties in a suit seeking a declaratory judgment of non-coverage is Insurer versus Insured and Injured Party. Both Home and Rovell are citizens of Illinois, which forecloses diversity jurisdiction in such a suit. Carving a single controversy into pieces— Insurer vs. Insured in the bankruptcy court, Insurer vs. Injured Party in the district court—nominally yields jurisdiction over each suit but creates the possibility of inconsistent outcomes (which has come to pass) and does not really solve the jurisdictional problem, for Rovell is an indispensable party under Fed.R.Civ.P. 19. He has a stake in the outcome because victory for Adco would restore the policy as an asset in the bankruptcy, remove the possibility that discharge will be denied for wasting the estate's assets, and affect the recoveries of other creditors; Adco's claim is derivative of Rovell's contract with Home. We need not trace through the consequences, however, because there is an independent source of federal jurisdiction.

Home's adversary proceeding in Rovell's bankruptcy named not only Rovell but also Adco. After entering the default judgment against Rovell, the bankruptcy

judge expressed doubt that he had jurisdiction over the dispute between Adco and Home and encouraged Home to dismiss the case and refile it in the district court. Home followed this advice, creating the problem we have discussed. It is a problem the bankruptcy judge could and should have averted. Its root is the default *judgment* against Rovell, as opposed to a notation of default. In a suit against multiple defendants a default judgment should not be entered against one until the matter has been resolved as to all. *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872). (Fed.R.Bankr.P. 7054(a), incorporating Fed.R.Civ.P. 54(b), permits a bankruptcy judge to enter final decision with respect to a single party in a multi-party case, but the judge did not use this power— nor was this an appropriate case for its use.) Having entered judgment prematurely against Rovell, the bankruptcy judge could have saved the day by adjudicating Home's claim against Adco. The insurance policy is an asset of Rovell's estate, Adco is a creditor, and the disposition of the claim may affect how much Adco and other creditors receive. Home versus Adco therefore was within the bankruptcy court's jurisdiction. See *UNR Industries, Inc. v. Continental Casualty Co.*, 942 F.2d 1101, 1103 (7th Cir.1991); *In re Xonics, Inc.*, 813 F.2d 127, 131–32 (7th Cir. 1987). More: it is *still* "a proceeding ... related to a case under title 11", 28 U.S.C. § 157(b)(3), and "relatedness" jurisdiction is available whether the claim is before a bankruptcy judge or a district judge. See 28 U.S.C. § 1334(b) ("the district courts shall have ... jurisdiction of all civil proceedings ... arising in or related to cases under title 11"). That all proceedings in Rovell's bankruptcy have been stayed until the insurance coverage dispute has been resolved is a testament to the link between the two.

The district judge's failure to withdraw the reference from the bankruptcy judge complicates matters, but not fatally. A district judge should not hear as an original matter any part of a bankruptcy case it has referred to a bankruptcy judge without first withdrawing the reference "in whole or in part, ... on its own motion or on timely

motion of any party, for cause shown." 28 U.S.C. § 157(d). No motion was made, and no cause was shown, in this case. But a judge's failure to follow orderly procedures for allocating bankruptcy matters within a district court does not deprive the court of subject-matter jurisdiction. It is an error, no doubt, but the kind of error that leads to reversal only if a party protests. Neither Home nor Adco challenges the district court's decision to resolve the case, and as it had adjudicatory competence no more need be said.

■ On to the merits. Home undertook in the malpractice policy

> [t]o pay on behalf of the Insured all sums in excess of the deductible amount ... which the Insured shall become legally obligated to pay as damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PE-RIOD AND REPORTED TO THE COM-PANY DURING THE POLICY PERIOD caused by any act, error or omission for which the Insured is legally responsible, and arising out of the rendering or failure to render professional services for others in the Insured's capacity as a lawyer or notary public.

The policy ran from April 1, 1994, to April 1, 1995, and would have entitled Rovell to coverage on Adco's malpractice claim, which was filed on October 21, 1994, if he had reported the claim to Home. But he did not, and Home did not learn of the suit from Adco until after April 1, 1995. Even under an occurrence policy, which links coverage to the date of the tort rather than of the suit, an insurer has a strong interest in prompt notice about claims, so that it can investigate or settle them. See *Transport Insurance Co. v. Post Express Co.*, 138 F.3d 1189, 1191–92 (7th Cir.1998). Illinois gives insureds a "reasonable" time to notify insurers under occurrence policies. E.g., *Barrington Consolidated High School v. American Insurance Co.*, 58 Ill.2d 278, 319 N.E.2d 25 (1974). A claims-made policy imposes a more rigid notice requirement, because it links coverage to the claim and notice rather than to the injury. Timing of suit and notice determines which policy applies—if any does. Coverage for claims made in a later period requires an additional premium, which Rovell did not pay. The district court's decision effectively required Home to cover more than one year's claims, but for only one year's premium. Because Rovell was uninsured for claims made after April 1, 1995, delay has had adverse consequences for Adco, but, for purposes of determining whether notice after the termination of a claims-made policy gives rise to coverage under that policy, Rovell's failure to pay for an additional period of coverage cannot matter. Home is bound only for the year's coverage it contracted to supply. The question at hand is whether Illinois enforces notice requirements in claims-made policies. As far as we can see, it does. *Cincinnati Insurance Co. v. Baur's Opera House, Inc.*, 296 Ill.App.3d 1011, 230 Ill.Dec. 624, 694 N.E.2d 593 (4th Dist.1998); *American Country Insurance Co.*, 289 Ill. App.3d at 250, 224 Ill.Dec. 805, 682 N.E.2d at 372. No case we have found, and none Adco has cited, invokes public policy to require the underwriter of a claims-made policy to defend or indemnify a claim of which it did not learn until after the policy expired. (We could imagine an argument for a little leeway if a suit had been filed against Rovell at the close of business on April 1, 1995; claims-made policies sometimes provide a short time for notice of claims made at the tail end of coverage, although this allowance also may come at a price. Because Adco's suit was filed with ample time remaining for notice, we need not explore the subject.)

Seizing on the statement in *Reagor* that "neither the insured nor the insurer, acting separately or together, may act to defeat the rights of the injured person" (*Reagor*, 92 Ill.App.3d at 105, 47 Ill.Dec. 507, 415 N.E.2d at 516), Adco maintains that its rights vested at the time of injury, so that Rovell's failure to comply with the policy's notice requirement came too late to defeat coverage. But propositions so abstract rarely decide concrete cases. In *Reagor* the insured notified the insurer and performed all of the policy's requirements; later the insured and insurer agreed that the policy did not cover the claim. All *Reagor* holds is that this bare agreement is not conclusive against an injured party, any more than a cancellation of

the policy (after the accident) and a refund of the premium to the insured would be. *Scott* holds that the insured's decision to accept workers' compensation coverage does not establish, in an action between the victim and the insurer, that the insured was an "employee" of the firm that paid benefits, and therefore that the accident was outside the policy's scope. *France* has nothing to do with Adco's contentions; it holds that the insurer may limit coverage to the vehicle named in the policy, foiling efforts by the insured to fool the insurer into thinking that the insured truck (rather than an uninsured truck) had been involved. None of these cases holds or even suggests that a policy's stated conditions of coverage are unenforceable. Cooperation and defense clauses then would be wiped out along with notice requirements. Suppose Rovell had notified Home in time but then refused to make his records available, or had insisted on managing the defense himself (despite a clause turning control over to Home), or had stipulated to liability. By the district court's reasoning, none of these events would relieve Home of its duty to indemnify. If an insurer must pay despite lack of notice, cooperation, and an opportunity to control the defense, the price of coverage will skyrocket—if the market can continue to exist. Nothing we have seen in the state cases suggests that Illinois has taken that path.

Adco's retainer agreement with Rovell did not require Rovell to carry malpractice insurance. Illinois permits clients to hire uninsured lawyers. The state does not have any statute for lawyers comparable to the law requiring drivers to carry liability insurance, and to our knowledge no court has interpreted the Code of Professional Responsibility to imply such a mandatory-insurance obligation. Cf. *Weisblatt v. Chicago Bar Association,* 292 Ill.App.3d 48, 225 Ill.Dec. 993, 684 N.E.2d 984 (1st Dist.1997). If it is proper to practice law without insurance, then it is also possible for lawyers to purchase claims-made policies with inflexible notice requirements, rather than occurrence policies with more lenient provisions. Illinois courts routinely enforce these agreements and so, therefore, must we.

In the end none of this may matter—for Adco was represented in the litigation against Taylor by Jenner & Block, of which Rovell was then a partner, and may have recourse against the firm's assets or insurance. Moreover, Adco's co-plaintiff in the Taylor suit, to whom Rovell supposedly diverted winnings in violation of his duties to Adco, is a partnership in which Adco has an interest. Indirect recovery through the partnership may be as good as direct recovery. Whatever claim remains against Rovell must be satisfied by Rovell personally, if he is liable for anything—a subject we have not broached, because like the district judge we have taken Adco's contentions at face value.

One last issue requires brief comment. We assumed when discussing subject-matter jurisdiction that Home and Adco are the only parties. That is not quite right. Dismayed by some statements in the district court's opinion, Rovell sought leave to intervene under Fed.R.Civ.P. 24 after judgment. Though Rovell disclaimed any interest in the suit's outcome, the district court allowed him to intervene *on the same side as Home* for the purpose of clarifying some facts for the court. That was a mistake, and not only because the motion to intervene was untimely (after judgment), unnecessary (Rovell could have made his views known as *amicus curiae*), inappropriate (if as the district court believed Rovell had no interest in the outcome, how could he be a party?), and created jurisdictional problems (if Rovell had been aligned as a defendant, as he should have been, diversity of citizenship would have vanished). As a debtor in bankruptcy, Rovell has a fiduciary duty to his creditors not to squander property of the estate, see 11 U.S.C. §§ 704(1), 1107(a), including his interest in the policy. *In re United States Brass Corp.,* 110 F.3d 1261, 1268 (7th Cir.1997); *Tringali v. Hathaway Machinery Co.,* 796 F.2d 553, 560–61 (1st Cir.1986) (Breyer, J.); cf. *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). A debtor in possession must act in the best interests of his creditors. Wasting assets during bankruptcy (or the preceding year) is a ground for denial of discharge. 11 U.S.C. §§ 727(a)(2), 1141(d)(3)(C). By failing to notify Home and then abetting its effort to

avoid coverage Rovell has betrayed his creditors by reducing the assets available to satisfy a judgment, should Adco prevail in the malpractice litigation.

The judgment of the district court is reversed, and the case is remanded with instructions to enter a declaratory judgment that Home has no duty to defend or indemnify Rovell in Adco's suit.