# Illinois Official Reports

## Appellate Court

*American Access Casualty Co. v. Alassouli*, 2015 IL App (1st) 141413

| | |
|---|---|
| Appellate Court Caption | AMERICAN ACCESS CASUALTY COMPANY, Plaintiff-Appellant, v. FARID ALASSOULI and EILEEN BENSON, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-14-1413 |
| Filed | April 29, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-43714; the Hon. LeRoy Martin, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Brianne M. Connell, of James P. Newman & Associates, Inc., of St. Charles, for appellant.<br><br>Dean Haritos and Cynthia Ramirez, both of Morse Bolduc & Dinos, LLC, of Chicago, for appellees. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Presiding Justice Pucinski and Justice Lavin concurred in the judgment and opinion. |

**OPINION**

¶ 1    Farid Alassouli made a left turn in front of Eileen Benson as she was driving through an intersection. To avoid hitting Alassouli's car, Benson made an evasive maneuver and struck the front end of another car. Benson made a claim against Alassouli's insurer, American Access Casualty Company (AACC). AACC tried to obtain information about the accident from Alassouli by leaving phone messages, which were not returned, and conducting a skip trace. When AACC could not locate Alassouli, it filed this declaratory judgment action seeking adjudication that it owes no duty to defend or indemnify Alassouli or Benson because Alassouli breached the insurance policy's cooperation clause. The trial court granted Benson's motion for summary judgment on the basis that AACC had not established substantial prejudice by Alassouli's breach of the cooperation clause.

¶ 2    We affirm. AACC failed to present evidence that: (i) it acted with reasonable diligence to secure Alassouli's cooperation in its investigation; (ii) Alassouli's failure to cooperate was willful; or (iii) Alassouli's breach of the cooperation clause substantially prejudiced it.

## BACKGROUND

¶ 4    On May 1, 2011, Farid Alassouli turned left from 79th Street onto Roberts Road in Bridgeview, Illinois, just in front of Eileen Benson's car as she passed through the intersection. To avoid striking Alassouli's car, Benson swerved, but then struck the front end of a car driven by Jacek Sader. Police cited Alassouli for failing to yield to oncoming traffic.

¶ 5    After the accident, Benson made a claim against Alassouli's AACC insurance policy for damages. An AACC claims adjuster, Cary Loseau, called Alassouli to clarify the facts surrounding the accident and obtain necessary information regarding the events leading up to the accident. Alassouli answered the call and identified himself. But once Loseau told Alassouli that AACC would be recording his statements, Alassouli hung up. Loseau immediately placed another call that went to voicemail, left a "detailed message regarding the need for additional information and informed Alassouli of the importance of returning the call." Five days later, AACC called Alassouli at the same number, leaving a message with his roommate, who promised that he would have Alassouli return the call. Alassouli never called back. AACC made two more phone calls, leaving messages, but again, no response from Alassouli. AACC then conducted a skip trace that revealed nothing about Alassouli's whereabouts. In total, AACC's efforts spanned 13 days and included 5 phone calls and a skip trace.

¶ 6    On December 10, 2012, AACC filed a declaratory action against Alassouli and Benson seeking an adjudication that it owes no duty to defend or indemnify Alassouli for any claim arising out of the accident. AACC maintains that it has no duty to defend or indemnify because Alassouli breached the insurance policy's cooperation clause when he failed to communicate with AACC after the numerous phone calls and messages. Benson appeared and filed an answer; Alassouli failed to appear or answer, and the trial court entered a default order against him. (Benson also filed a separate personal injury complaint against Alassouli in the circuit court of Cook County.)

¶ 7    AACC's cooperation clause provides:

"The insured shall cooperate with the Company and, upon the Company's request or through attorneys selected by the Company to represent the insured must \*\*\* (b) assist in making settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of any legal proceedings in connection with the subject matter of this insurance \*\*\* (i) allow the Company to take signed and recorded statements and answer all questions we may ask when and as often as we may require; (j) submit to examinations under oath as often as the Company requires, outside the presence of any other insured or person to be examined under oath \*\*\*. The company has no duty to provide coverage under this policy unless there has been full compliance with these responsibilities \*\*\*."

¶ 8    On June 5, 2013, AACC filed a motion for summary judgment, arguing it owes no duty to defend or indemnify Alassouli because he breached the cooperation clause. The trial court denied the motion. A few months later, Benson filed a motion for summary judgment against AACC, arguing that Alassouli did not breach the insurance policy, as a matter of law, because AACC neither showed that it had been substantially prejudiced by the breach nor exercised due diligence in attempting to contact Alassouli. In support, Benson attached affidavits of Sader and Jose De Anda.

¶ 9    Sader, in his affidavit, stated he saw Alassouli attempt to make a left turn in front of Benson without properly yielding, causing Benson to make an evasive maneuver to avoid hitting Alassouli. In evading Alassouli's car, Sader stated, Benson collided with the front end of Sader's car. De Anda, an independent witness, reported that he saw a "medium sized sedan" make a left turn directly in front of a sport utility vehicle (SUV), and the SUV had to make an evasive maneuver to avoid contact with the sedan. While the SUV successfully avoided the sedan, it struck another car that was stopped at a red light. De Anda's affidavit does not identify the drivers.

¶ 10    AACC responded to Benson's motion for summary judgment and filed a cross-motion for summary judgment. AACC argued that Alassouli's breach of the cooperation clause was willful and, therefore, prejudice is presumed. AACC attached affidavits from AACC claims adjuster Cary Loseau and Gunther Polak, a private investigator retained to locate Alassouli about two years after the incident. Loseau recounted the efforts he made to contact Alassouli via five telephone calls and the skip trace. Polak stated that he went to Alassouli's known address in Justice, Illinois, but a new tenant lived in the apartment and had no knowledge of its former occupants. Polak talked to neighbors in the apartment building who also were unable to provide any information. Polak obtained no additional or updated information from the vehicle registration or driver's license. Polak stated that a skip trace showed a post office box address in Bedford Park, Illinois, as well as a "very recent mid-year 2013" address in San Diego, California. But Polak was unable to verify the information and no telephone number, published or unpublished, was at the California address in Alassouli's name. Finally, the post office box in Bedford Park was closed and a forwarding address led to another apartment building in Justice. Polak visited the new apartment building but did not find any trace of Alassouli at that location or elsewhere. (Polak's affidavit is dated January 10, 2014, and the record suggests that his investigation occurred in the latter half of 2013.)

¶ 11    Following the hearing on the cross-motions for summary judgment, the trial court entered judgment in favor of Benson because AACC failed to show Alassouli's failure to cooperate

substantially prejudiced it.

¶ 12 STANDARD OF REVIEW

¶ 13    "Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. A triable issue of fact exists "where there is a dispute as to material facts, or where, the material facts being undisputed, reasonable persons might draw different inferences from the facts." (Internal quotation marks omitted.) *Wolfram Partnership, Ltd. v. LaSalle National Bank*, 328 Ill. App. 3d 207, 215 (2001). An appellate court reviews a disposition of summary judgment *de novo*. *Beltran*, 2013 IL App (1st) 121128, ¶ 43.

¶ 14    ANALYSIS

¶ 15    AACC argues that the trial court erred in granting summary judgment on the grounds that AACC failed to show it was substantially prejudiced by Alassouli's breach of the cooperation clause. Specifically, AACC contends it need not establish prejudice, but, in any event, it did show prejudice by Alassouli's breach of the cooperation clause.

¶ 16    General principles of contract law govern insurance contracts. *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 191 (1991). The terms of the contract define and control the scope of duties imposed on an insurer and the insured. *Id.* Courts should enforce clear and unambiguous provisions of insurance contracts according to their plain meaning. *Id.* at 191-92.

¶ 17    A cooperation clause prevents collusion between the insured and injured and enables an insurer to prepare its defense to a claim. *M.F.A. Mutual Insurance Co. v. Cheek*, 66 Ill. 2d 492, 496 (1977). "Any condition in the policy requiring cooperation on the part of the insured is one of great importance [citation], and its purpose should be observed [citation]." *Waste Management*, 144 Ill. 2d at 191. The insurer usually has little or no knowledge of the facts surrounding a claim, while the insured has knowledge of the facts. *Id.* at 204. Thus, the insurer depends on the insured for fair disclosure. *Id.* The insured has no duty to assist the insurer in any effort to defeat a proper claim, but the "cooperation clause does obligate the insured to disclose all of the facts within his [or her] knowledge and otherwise to aid the insurer in its determination of coverage under the policy." *Id.* To establish a breach of the cooperation clause, the insurance company must show that it exercised a reasonable degree of diligence in seeking the insured's participation and the insured's failure to participate was due to a refusal to cooperate. *Mazzuca v. Eatmon*, 45 Ill. App. 3d 929, 932 (1977). These determinations depend on the facts and circumstances of the particular case. *Id.*

¶ 18    Automobile insurance policies represent more than private agreements between the insured and the insurer. *Cheek*, 66 Ill. 2d at 500-01. Public policy considerations underlying insurance contracts seek to afford protection to members of the public, generally innocent third parties. *Id.* Accordingly, to be relieved of its contractual obligations under the policy, an insurer must show that the insured's refusal to cooperate in its investigation caused it substantial prejudice. *Id.* " 'Such relief, absent a showing of prejudice, would be tantamount to a questionable windfall for the insurer at the expense of the public.' " *Id.* at 501 (quoting *Oregon Automobile Insurance Co. v. Salzberg*, 535 P.2d 816, 819 (Wash. 1975)). To establish substantial prejudice, the insurer needs to show the insured's violation of the cooperation clause hampered

its investigation. *Cheek*, 66 Ill. 2d at 499. Courts do not presume prejudice when the insurer invokes a breach of the cooperation clause. *Id.* "This is the test to be employed in our courts in cases where the issue is a breach of the cooperation clause. This is not a tyranny of labels but a direct statement of the criterion to be employed where the cooperation clause is in issue." *Id.*

¶ 19 AACC relies on *Gallaway v. Schied*, 73 Ill. App. 2d 116 (1966), *Safeco Insurance Co. of Illinois v. Treinis*, 238 Ill. App. 3d 541 (1992), and *American Country Insurance Co. v. Bruhn*, 289 Ill. App. 3d 241 (1997), for arguing that it need not show prejudice. None of these cases help AACC. To begin, the *Cheek* court rejected the *Gallaway* reasoning that " '[i]f there is a substantial or material lack of cooperation found as a matter of fact, the insurer is not required to establish prejudice or detriment thereby in order to disclaim liability.' " *Cheek*, 66 Ill. 2d at 499 (quoting *Gallaway*, 73 Ill. App. 2d at 125). As for *Treinis*, the court did not make any reference to, or explain, the insurer's burden of proving substantial prejudice. The court there found a violation of the cooperation clause after the insured notified the insurer of an automobile accident but never communicated with it again. *Treinis*, 238 Ill. App. 3d at 549. The court considered the insured's violation of the cooperation provision "beyond cavil" where "the total lack of contact between [the insured and permissive driver] and the insurer shows noncooperation." *Id.* The court concluded, "no contact with [the insurer] without any extenuating circumstances leads only to the conclusion that there was a breach of the cooperation clause." *Id.* We decline to follow *Treinis* because of our supreme court's explicit instruction that an insurer must prove substantial prejudice, which will not be presumed. See *Cheek*, 66 Ill. 2d at 498-99; see also *United Automobile Insurance Co. v. Buckley*, 2011 IL App (1st) 103666, ¶ 28 ("A presumption of prejudice does not exist when an insurer raises a breach of the cooperation clause.").

¶ 20 In *Bruhn*, the insured struck and killed two pedestrians while driving his automobile. *Bruhn*, 289 Ill. App. 3d at 243. The insured denied and concealed his involvement in the accident for about three years, but eventually admitted his involvement to the police. *Id.* The defendant filed suit against the insured for negligence, wrongful death, and intentional infliction of emotional distress. *Id.* The insured provided the insurer notice of the accident and lawsuit. *Id.* The insurer's claim representative testified that the insured called it to give notice of the accident and lawsuit, but he refused to provide a recorded statement to the insurer for purposes of liability assessment, and the insurer recorded the insured's refusal to provide the recorded statement. *Id.* at 245. The insurer then filed a declaratory judgment action seeking to deny coverage based on the insured's breach of the policy's cooperation and notice clauses. *Id.* at 244. The trial judge stayed the declaratory judgment action until the underlying lawsuit was resolved. *Id.* The parties in the underlying lawsuit then entered into a stipulated judgment against the insured for $25,000, "provided that the award could only be collected from whatever rights [the insured] had in his insurance policy and not from [his] personal assets." *Id.* The trial judge in the declaratory judgment entered a judgment against the insurer because notice was sufficient and the insured did not refuse to cooperate. *Id.* at 246.

¶ 21 The appellate court reversed the trial court's judgment, holding that the insured breached the notice and cooperation clauses. *Id.* at 249. The court found that the insurer established a "*prima facie* case of breach of the cooperation provision" when he refused to provide a statement about the accident and "then entered into a stipulated judgment, which admitted liability but provided that damages could only be collected from the [insurer]." *Id.* As to the insurer needing to establish prejudice to deny coverage, under the facts, based on a lack of

cooperation, the court reasoned that the insurer could only prove prejudice by knowing what the insured's statement would have revealed, but because he refused to provide a statement, the insurer couldn't know how it was prejudiced. *Id.* at 250. Thus, explained the court, "[w]hen an insured completely fails to communicate with the insurer regarding an accident, '[a] violation of [the cooperation] provision is patent.'" *Id.* (quoting *Treinis*, 238 Ill. App. 3d at 549). Finally, the court determined that the public policy considerations underlying automobile insurance policies "militate strongly against coverage in this case" because the insurer stipulated to a judgment requiring the insurer to pay. *Id.* at 250-51. "We know of no public policy that promotes subterfuge and allows an individual to profit from the concealment of a crime, nor do we deem it appropriate to create one." *Id.* at 251.

¶ 22    Benson made a claim against AACC, AACC then called Alassouli, and Alassouli hung up the phone after AACC told him it would be recording his statements. Alassouli failed to return any of AACC's four additional phone calls. The facts in *Bruhn* are strikingly different. Unlike *Bruhn*, Alassouli did not explicitly refuse to give a statement to AACC, nor was his refusal recorded. Instead, Alassouli hung up the phone and failed to return the calls. Also unlike *Bruhn*, Alassouli did not conceal his involvement in an accident, nor thereafter enter into a stipulated judgment requiring indemnification. The insured in *Bruhn* essentially colluded with the injured party by refusing to cooperate and then entered into a judgment whereby he admitted liability but provided that damages could only be collected from his insurance company. *Bruhn*, 289 Ill. App. 3d at 249. Nothing like this occurred between Alassouli and Benson. Because *Bruhn* involved unusual facts and collusion, it has no bearing on AACC's requirement to prove substantial prejudice.

¶ 23    Thus, contrary to AACC's contention, it must show substantial prejudice in its investigation of the claim due to Alassouli's refusal to cooperate; it also must show it exercised a reasonable degree of diligence in seeking Alassouli's participation and that Alassouli willfully refused to cooperate.

¶ 24                    Reasonable Degree of Diligence and Refusal to Cooperate

¶ 25    Whether the insured breached the cooperation clause requires the insurer show an exercise of a reasonable degree of diligence in seeking the insured's participation and that the insured's lack of participation represented a willful refusal to cooperate. *Mazzuca*, 45 Ill. App. 3d at 932; *United Automobile Insurance Co. v. Buckley*, 2011 IL App (1st) 103666, ¶ 27. The insurer has to act in good faith to secure the insured's cooperation. *Wallace v. Woolfolk*, 312 Ill. App. 3d 1178, 1180 (2000). "Good faith is evaluated not only in terms of what the insurer did to secure cooperation, but also in terms of what the insured failed to do." *Id.* An insurer's exercise of reasonable diligence and the insured's failure to participate by refusing to cooperate both involve questions of fact that must be shown by a preponderance of the evidence. *Id.*

¶ 26    AACC argues it exercised reasonable diligence by calling Alassouli five times, leaving detailed messages, conducting a skip trace, and, much later, hiring a private investigator to locate the insured. AACC claims that Alassouli "simply did not wish to cooperate, even after AACC continued to try to contact him." AACC explains that it had a known "verified" phone number for Alassouli and Alassouli "willfully and intentionally" refused to cooperate. Indeed, AACC argues it went further than required by running a skip trace and hiring a private investigator.

- 6 -

¶ 27    Case law undermines AACC's argument that it met the standard of reasonable diligence. For instance, *Founders Insurance Co. v. Shaikh*, 405 Ill. App. 3d 367 (2010), indicates the extent of efforts an insurer must take to satisfy the element of reasonable diligence. In *Shaikh*, the defendant-insured, after an automobile accident, eventually was served with summons and a complaint regarding the accident. *Shaikh*, 405 Ill. App. 3d at 368-69. The defendant then telephoned the insurer, notified it of the lawsuit, and faxed the materials along with his current phone number and address. *Id.* at 369. About a week later, the defendant again telephoned the insurer inquiring into the lawsuit. *Id.* Eventually, correspondence sent to the defendant was returned as undeliverable and his phone number had been disconnected. *Id.* In an attempt to locate the defendant, an agent of the insurer personally visited the defendant's last two known addresses. *Id.* at 370. The insurer then hired an investigation firm, which visited an additional address, talked to the defendant's family members, and revisited the defendant's listed addresses. *Id.* The insurer continued to send letters to the three addresses associated with the defendant, and all came back as undeliverable. *Id.* The insurer also pursued a lead from the postal service by sending a letter by regular and certified mail and personally visiting the property. *Id.* at 370-71. The insurer telephoned the defendant's family members, and it pursued leads that the defendant may have been incarcerated. *Id.* at 371. After an arbitration award was entered against the defendant in the underlying action, the insurer filed a declaratory action against the defendant. *Id.* The insurer attempted to serve the defendant through a deputy sheriff, but the defendant's ex-wife informed the sheriff that she divorced the defendant 16 years earlier and did not know where he could be located. *Id.* Then, the investigation firm visited the defendant's address listed on his Illinois driver's license, but the defendant's name was not on any mailbox and tenants in different apartments all indicated they did not know the defendant. *Id.* at 371-72. Eventually, the insurer was granted leave to serve the defendant through the Secretary of State and by publication, but the trial court ultimately entered a default against the insured for failing to appear. *Id.* at 372.

¶ 28    The *Shaikh* court found the insurer used reasonable efforts and diligently pursued the insured to secure cooperation with its investigation and defense. *Id.* at 378. The court reasoned that the insurer used sources that were likely to disclose the defendant's whereabouts. *Id.* The court noted that the insurer's search was "sufficiently broad and successful at producing leads, and it pursued and exhausted every lead it generated." *Id.* The insurer began an investigation "[w]ithin mere days of being alerted to a potential problem" and it kept an active search–both itself and through the use of independent investigators–for nearly a year. *Id.* Despite the efforts, "[t]he investigation went cold *** because none of these efforts led to [the defendant] or generated any further leads." *Id.* Hence, the insurer used reasonable diligence in finding the insured. *Id.*

¶ 29    Contrast *Shaikh*'s dynamic efforts with AACC's mere five phone calls to Alassouli's known phone number and a skip trace. After Alassouli heard that his statement about the accident would be recorded, he hung up. But, all AACC could muster at the critical time, around first learning about the incident, was to make over a few days four more phone calls, leaving messages with Alassouli's roommate and on voicemail and to conduct a skip trace. Much later, after two years elapsed and in connection with filing the declaratory action, AACC hired a private investigator who, considering the long passage of time, came up empty.

¶ 30    AACC argues the due diligence standard set forth in *Shaikh*, where the insured has gone missing, does not apply where the insured simply refuses to cooperate. AACC argues that

because Alassouli was not missing but simply refused to speak, *Shaikh* "has no bearing." We find AACC's argument unpersuasive. True, Alassouli disconnected the initial phone call, failed to answer an immediate return call, and never returned the three additional calls. But, as a matter of law, five attempted phone calls and a skip trace in the matter of less than two weeks and nothing more until a declaratory judgment petition is on the line does not suffice to claim an insurer used reasonable diligence to secure the insured's cooperation. Unlike *Shaikh*, AACC made no attempt to visit Alassouli's known address or send any letters via mail or conduct an ongoing effort to talk to or find Alassouli. Also unlike *Shaikh*, AACC's attempt to seek Alassouli's cooperation was slight, and cannot be characterized as having gone "cold." *Id.* Instead, AACC summarily concluded that Alassouli refused to cooperate after not returning phone calls after a lapse of 13 days. Moreover, if AACC's skip trace revealed no new phone numbers or addresses, why would not AACC have then visited the known address or send letters seeking his cooperation? In sum, AACC's efforts were wanting and deficient.

¶ 31    AACC's efforts to locate Alassouli more closely resemble those of the insurer in *Mazzuca v. Eatmon*, 45 Ill. App. 3d 929 (1977), which were found to be inadequate. In *Mazzuca*, the insurer, after receiving notice of an accident and pending lawsuit from the plaintiff's attorney, had an investigator attempt to locate the insured. *Id.* at 930. The investigator went to the insured's known address, could not find him in the apartment building, and did not gather information from third persons at local establishments. *Id.* The investigator contacted the post office for a forwarding address and went to the insured's place of employment, where he left a business card. *Id.* at 930-31. The investigator returned to the place of employment after the insured had been discharged, but he obtained another phone number that he failed to call, two addresses he failed to visit, and a post office box. *Id.* at 931. He also failed to look up driver's license records, determine the insured's social security information, pursue any credit reports, locate any relatives, or place an ad in the newspaper. *Id.* In total he spent 5.25 hours attempting to locate the insured. *Id.* A year later, the insurer sent a letter to the insured's address and place of employment; both were returned. *Id.* Two years later, the insurer hired a new investigator who attempted to find the insured by talking to relatives and following a fraudulent credit card lead. *Id.*

¶ 32    Despite these efforts, the court found that the insurer did not establish reasonable diligence and the insured refused to cooperate. *Id.* at 934. The court ultimately concluded that the two investigations were not pursued and the "efforts can scarcely be said to establish the exercise of a reasonable degree of diligence necessary to invoke the affirmative defense of noncooperation." *Id.*

¶ 33    In addition, Alassouli's failure to return phone calls serves as constructive notice that a problem existed. See *Johnson v. Wade*, 47 Ill. App. 3d 610, 615 (1977) (finding that insured's nonresponse to letters within a reasonable time "served as constructive notice that a problem existed"). Although he hung up the first phone call, AACC made little effort (four more phone calls and a skip trace) to secure Alassouli's cooperation. AACC expended minimal effort to contact Alassouli personally and much more could and should have been undertaken to procure his cooperation. See *Lappo v. Thompson*, 87 Ill. App. 3d 253, 255 (1980) (reasoning that when insurer had constructive notice that problem existed, "much more could and should have been done to secure [insured's] cooperation"). Despite Alassouli's failure to return the phone calls, any number of reasons exist for his failure to do so. See *Mazzuca*, 45 Ill. App. 3d at 934 (efforts "little more than a cursory, *pro forma* procedure"). AACC did not mail Alassouli

any letters, did not attempt to personally visit his known address, nor did it pursue any alternative methods of talking to Alassouli. While it cannot be stated with any certainty that those efforts would have proven fruitful, their absence demonstrates a cursory investigation. *Id.*

¶ 34 We are mindful that AACC preemptively filed this declaratory action based on Alassouli's noncooperation before Benson filed an underlying lawsuit. But this fact only exacerbates AACC's shortcomings. To explain, AACC made a cursory attempt to secure Alassouli's cooperation. It presents no evidence that it attempted to inform Alassouli of the consequences of his noncooperation. AACC left a "detailed message regarding the need for additional information and informed Alassouli of the importance of returning the call." It does not argue that it explained the need for his cooperation or that his noncooperation could potentially result in personal liability for any money damages arising out of the accident. Thus, his failure to cooperate can as easily be attributed to lack of notice as to what was expected. *Mazzuca*, 45 Ill. App. 3d at 933-34 (finding it reasonable to assume that insured did not know of contractual obligation to cooperate). What the court observed in *Mazzuca* applies with equal effect here, "[t]here is no evidence that [the insured] ever became aware of any such obligation, and then willfuly refused to comply. His failure to cooperate can as easily be attributed to lack of notice as to what was expected from him." *Id.* at 934.

¶ 35 Moreover, AACC's retention of a private investigator to locate Alassouli does not militate against its shortcomings. AACC hired Polak after it filed the declaratory action seeking to relieve itself of liability and some two years after the accident. Polak's investigation, though more active, does nothing to absolve AACC of its duty. *Id.* As the saying goes, it is too little, too late.

¶ 36 Because AACC's efforts to gain Alassouli's cooperation were cursory, AACC did not prove beyond a reasonable doubt that it exercised reasonable diligence and Alassouli's failure to cooperate was willful.

¶ 37                                    Substantial Prejudice

¶ 38 AACC claims that it did show substantial prejudice by attaching the affidavit of Cary Loseau, in which he stated that AACC cannot determine its coverage for the accident or liability due to Alassouli's failure to communicate.

¶ 39 To be a defense under an insurance policy, the alleged breach of the cooperation clause needs to substantially prejudice the insurer in its investigation or in defending an underlying action. *Cheek*, 66 Ill. 2d at 498-99. An insurer must demonstrate that "it was actually hampered" in its investigation or defense by the insured's violation of the cooperation clause. *Id.* at 499. "Nor is there any presumption of prejudice when the insurer attempts to avoid responsibility for a breach of the cooperation clause." *Id.*

¶ 40 AACC argues it is difficult for "insurers to show prejudice because with a substantial failure to cooperate, an insurer would never know precisely what information it could have had *** insurers cannot be placed in the position of having to prove what information it could have gleaned or what a statement from its insured would have been." It also claims it has no obligation to show the loss falls within the terms of the policy because that is Alassouli's obligation. AACC claims it "cannot even make the determination as to whether coverage is available, let alone the liability issues." And, AACC adds, it need not find information concerning the accident from other sources, such as Sader or De Anda, because "[o]nly the

insured is a party to the contract at issue ***. Thus, the only individual obliged to cooperate is the insured. *** Indeed, even looking at the affidavits provided by Benson does not confirm that Alassouli was even in an accident." AACC also maintains that the affidavit of Cary Loseau evinces prejudice due to Alassouli's refusal to cooperate because as Loseau stated, AACC could not determine if there was coverage or if Alassouli was liable for the accident.

¶ 41 Aside from Loseau's affidavit, AACC presents no evidence of prejudice in its investigation, as it was, of the claim. Simply put, AACC cannot prove substantial prejudice in its investigation when it failed to even conduct a proper investigation. Instead, the evidence suggests AACC's so-called investigation consisted only of the five phone calls placed to Alassouli, a skip trace, and its retention of a private investigator years after the accident to locate Alassouli. See *State Farm Mutual Automobile Insurance Co. v. McSpadden*, 88 Ill. App. 3d 1135, 1138 (1980) ("While an insurer should be able to rely on the statements of its insured in many circumstances, doing so will not always absolve the insurer of its duty to investigate an accident.").

¶ 42 Moreover, AACC failed to present any evidence that might otherwise suggest that Alassouli was not involved in the accident or that he was not liable. AACC had notice of the accident shortly after it occurred and had access to information about the accident, including the police report. AACC correctly notes that police reports are generally inadmissible hearsay. *People v. Williams*, 240 Ill. App. 3d 505, 506 (1992). But the inadmissibility of police reports as evidence in court proceedings has no bearing on whether AACC could obtain information from it for purposes of investigating its potential liability for the accident. The report contains a narrative of the accident, a list of the individuals involved in the accident, license plate numbers and vehicle models, any citations or arrests for the accident, and potential witnesses. AACC only sought information from Alassouli and summarily denied coverage based on its inability to receive information from him, despite the availability of alternative sources of information. We see no reason to absolve AACC of its duty to investigate the accident in light of the alternatives.

¶ 43 Finally, an automobile insurance policy "is more than a private agreement between the insured and the insurer against losses sustained as a result of the negligent operation of a motor vehicle." *Cheek*, 66 Ill. 2d at 499-500. Such policies "abound with public policy considerations" and they should afford affected members of the public–innocent third persons–"the maximum protection possible consonant with fairness to the insurer." (Internal quotation marks omitted.) *Id.* at 501. The evidence in the record strongly suggests Benson to be an innocent party in the accident. Thus, AACC should not be awarded a "questionable windfall" when it has failed to establish that Alassouli's nonparticipation substantially prejudiced its investigation of the claim. See *id.*

¶ 44                                    CONCLUSION

¶ 45 AACC has failed to prove it exercised reasonable diligence in obtaining Alassouli's participation or that its investigation of the claim was substantially prejudiced by his refusal to cooperate. Thus, we affirm the trial court's order granting summary judgment in Benson's favor.

¶ 46 Affirmed.