Aureo Rivera DAVILA and Aureo
E. Rivera, Plaintiffs,

v.

David F. ARLASKY and John
L. Mulkerin, Defendants.

INTERNATIONAL INSURANCE COMPA-
NY, a corporation, United States Fire
Insurance Company, a corporation, The
North River Insurance Company, a cor-
poration, and Sentry Insurance a Mutu-
al Company, as Assumptive Reinsurer of
Great Southwest Fire Insurance Compa-
ny, Intervenors–Petitioners,

v.

David F. ARLASKY, Aureo Rivera
Davila, and Aureo E. Rivera,
Respondents.

No. 90 C 6600.

United States District Court,
N.D. Illinois,
Eastern Division.

July 18, 1994.

Marc Oliver Beem, James P. Bailinson, Lisa M. Ramsden, Miller, Shakman, Hamilton, Kurtzon & Shlifke, Michael L. Blumenthal, Milton M. Blumenthal & Associates, Chicago, IL, Charles A. Cordero, Cordero, Miranda & Pinto, San Juan, PR, for Aureo Rivera–Davila and Aureo E. Rivera.

Aureo E. Rivera, pro se.

William Edward Spizzirri, Kralovec, Marquard, Doyle & Gibbons, Chtd., Chicago, IL, for International Ins. Co., U.S. Fire Ins. Co. and North River Ins. Co.

Larry S. Kaplan, Lawrence S. Gosewisch, Adler, Kaplan & Begy, Chicago, IL, for Sentry Ins.

Louis Anthony Varchetto, William J. Wylie, Dennis Allen Van Der Ginst, Wylie, Mulherin, Rehfeldt & Varchetto, Wheaton,

IL, for David F. Arlasky and defendant John L. Mulkerin.

Robert Daniel Gordon, Towbin & Zazove, Ltd., Chicago, IL, for John Joseph Mulkerin.

Larry S. Kaplan, Adler, Kaplan & Begy, Chicago, IL, for Great Southwest Fire Ins. Co.

## MEMORANDUM OPINION AND ORDER

WILL, District Judge.

Before the court are motions for summary judgment filed by intervenors-petitioners insurance companies in this patent infringement suit brought by Aureo Rivera Davila and Aureo E. Rivera (the "Riveras") against David Arlasky and John Mulkerin. Intervening petitioners International Insurance Company, United States Fire Insurance Company, and North River Insurance Company (the "Insurers"), and intervening petitioner Sentry Insurance, as assumptive reinsurer of Great Southwest Fire Insurance Company ("Great Southwest") seek a declaration by this Court that as a matter of law neither the Insurers nor Great Southwest has a duty to defend Arlasky or a duty to indemnify Arlasky for any judgment entered against him. For the following reasons, we grant summary judgment in favor of the Insurers and Great Southwest.

### BACKGROUND

The Riveras first brought a patent infringement suit against Chapman Industries, Inc. on January 2, 1985. That suit was dismissed without prejudice and they refiled on December 11, 1987. Plaintiffs obtained a default judgment of infringement of their patent against Chapman Industries. This judgment proved uncollectible and they then filed this suit against David Arlasky and John Mulkerin, the chief officers and sole shareholders of Chapman Industries, for infringement and inducing infringement. Subsequently, Mulkerin was discharged in bankruptcy, leaving Arlasky as the sole defendant in this case.

This Court set a pre-trial conference on May 26, 1993. Despite a court order requiring Arlasky's presence, he failed to appear at the conference. At a subsequent hearing, after this Court inquired about his absence, his counsel informed the Court that he had not been in contact with Arlasky since December 1992. Since that time, Arlasky has neither appeared in court nor been in contact with his counsel. In addition, his counsel has stated that Arlasky's solvency at this time is questionable.

Although International Insurance Company, United States Fire Insurance Company, North River Insurance Company, and Great Southwest Insurance Company previously filed motions to intervene, which this Court denied, the insurance companies again requested leave to intervene, in light of Arlasky's failure to appear and his apparent inability or unwillingness to pay any future judgment which might be entered against him. We granted the insurers leave to intervene based on the change in circumstances. Before us now are the intervening insurance companies' motions for summary judgment.

### DISCUSSION

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must draw all inferences in the light most favorable to the nonmoving party. *See Regner v. City of Chicago*, 789 F.2d 534, 536 (7th Cir.1986). Under Illinois choice of law rules, Illinois law applies to our interpretation of the contract issues.

1. *Policy Coverage for Patent Infringement and Inducement of Infringement*

Beginning in 1982, Insurers, all of whom are part of Crum & Forster Insurance Company, issued a series of six comprehensive general liability ("CGL") insurance policies. Beginning in 1981, Great Southwest issued a series of two commercial umbrella policies and one excess indemnity policy. All of these policies provide coverage for bodily injury, property damage, personal injury, and advertising injury. At issue is whether the patent infringement alleged in this suit is

covered under the policies as advertising injury.

In determining whether an insurance policy provides coverage, we look to the terms of the contract. Because Illinois substantive law governs in this case, we are bound by the principles of policy construction set forth by the Illinois courts. The construction of an insurance policy is a question of law. *Outboard Marine Corp. v. Liberty Mutual Ins. Co.*, 154 Ill.2d 90, 180 Ill.Dec. 691, 699, 607 N.E.2d 1204, 1212 (Ill.1992). Furthermore,

> [i]n construing an insurance policy, the court must ascertain the intent of the parties to the contract. To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole, with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract. If the words in the policy are ambiguous, a court must afford them their *plain, ordinary, and popular meaning*. However, if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous and will be construed in favor of the insured and against the insurer who drafted the policy.

180 Ill.Dec. at 699, 607 N.E.2d at 1212 (citations omitted).

We first examine the language of the contracts themselves. Under the comprehensive liability policies at issue,

> "Advertising Injury" means injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition or infringement of copyright, title or slogan.

The policies do not define further any of the terms which plaintiffs argue are applicable here, namely "piracy," "unfair competition," or "infringement of title." The policies do contain a list of items which are *not* covered. The most relevant states that the insurance policy does not apply to advertising injury arising out of "infringement of trademarks, service marks or trade name other than titles or slogans by use thereof or in connection with goods, products or services sold, offered for sale or advertised." Beyond this sparse policy language, the policies do not provide further assistance in determining whether patent infringement is covered as advertising injury.

The umbrella policies define advertising liability as follows:

> **Advertising Liability.** The term "advertising liability" means:
>
> (A) libel, slander or defamation,
>
> (B) infringement of copyright or of title or slogan,
>
> (C) piracy or unfair competition or idea misappropriation under an implied contract,
>
> (D) invasion of right of privacy, committed or alleged to have been committed in any advertisement, publicity, article, broadcast or telecast and arising out of the named insured's activities.

The excess policy provides coverage for advertising injury, defined as:

> injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities if such injuries arise out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition or infringement of copyright, title or slogan.

■ The parties have not cited, and we have not found, an Illinois supreme court case which discusses whether a policy providing coverage for piracy, unfair competition, and infringement of title should be construed to cover patent infringement. In the absence of a supreme court case in point, a federal court sitting in diversity must predict how the state supreme court would decide the case. *Adams v. Fred Weber, Inc.*, 849 F.2d 1018, 1026 (7th Cir.1988). Further, "[w]e are obliged to consider the holdings of state appellate courts, but are not bound to do so if we have good reasons for diverging from those decisions." *McGeshick v. Choucair*, 9 F.3d 1229, 1232 (7th Cir.1993).

The closest Illinois appellate case is *International Ins. Co. v. Florists' Mutual Ins. Co.*, 201 Ill.App.3d 428, 147 Ill.Dec. 7, 559 N.E.2d 7 (Ill.App.Ct.1990). In *Florists' Mu-*

*tual,* the court held that antitrust injury resulting from the processing of floral orders was not advertising injury. In the underlying suit, Florists' Transworld Delivery Association ("FTD") was charged in a federal court action with antitrust violations flowing from an in-house rule which prescribed conditions for processing floral arrangements which had been advertised in a particular way. The defendant insurance company argued that while the federal complaint did not allege an injury directly caused by advertising, a sufficient relationship existed between advertising and the injury. The plaintiff insurance company, on the other hand, argued that the federal complaint did not allege advertising injury. It argued that to find coverage under the policy terms "would be to conclude that if unfair competition in any way whatsoever, no matter how remote, involved advertising, there would be potential coverage." 147 Ill.Dec. at 9, 559 N.E.2d at 9.

The court held that it was undisputed that the challenged rule was an internal FTD rule not reproduced or broadcast to the public and that the term "advertising" refers to the widespread distribution of promotional material to the public at large. Further, the court stated, "Even under the broad definition of 'arising out of' that International advances, we do not believe that the allegations of the underlying complaint support a conclusion that there is a causal connection between FTD advertising activity and the injury alleged in the Federal suit." *Id.* 147 Ill.Dec. at 10, 559 N.E.2d at 10.

Although *Florists' Mutual* did not involve the same issue presented in this case, it is consistent with the rationale which has been adopted by the majority of courts to consider the question before us. In *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 10 Cal. Rptr.2d 538, 833 P.2d 545 (Cal.1992), the California Supreme Court discussed at length the requirement that advertising have proximately caused the damages in order to be covered under the advertising injury provisions of an insurance policy. The court noted that other courts which had examined the question had "rejected coverage claims based on injuries that did not have a causal connection with the insured's advertising ac-

tivities." 10 Cal.Rptr.2d at 551, 833 P.2d at 558. The court explained that a causal connection was necessary in order to invoke coverage because "[t]aken to its extreme, [the argument that no causal relationship is necessary] would lead to the conclusion that any harmful act, if it were advertised in some way, would fall under the grant of coverage merely because it was advertised.... Thus, a great many acts may fall within the ambit of advertising, extending advertising injury coverage far beyond the reasonable expectations of the insured." *Id.* 10 Cal.Rptr.2d at 552, 833 P.2d at 559, quoting *National Union Fire Ins. Co. v. Siliconix, Inc.,* 729 F.Supp. 77, 80 (N.D.Cal.1989). Additionally,

> as a matter of common sense, an objectively reasonable insured would not expect "advertising injury" coverage to extend as far as the Bank argues it should extend. Virtually every business that sells a product or service advertises, if only in the sense of making representations to potential customers. If no causal relationship were required between "advertising activities" and "advertising injuries," then "advertising injury" coverage, alone, would encompass most claims related to the insured's business. However, insureds generally expect to obtain such broad coverage, if at all, only by purchasing several forms of insurance, including coverage for "errors and omissions liability," "directors and officers liability," "completed operations and products liability," and/or other coverages available as part of CGL policy. (See, e.g., 3 California Insurance Law, Matthew Bender 1990, at 43–55 et seq., 47–36 et seq., 49–80 et seq. [examples of policy forms for various coverages].)
>
> For these reasons, we hold that "advertising injury" must have a causal connection with the insured's "advertising activities" before there can be coverage.

10 Cal.Rptr.2d at 553, 833 P.2d at 560 (footnote omitted).

█ The same observation can be made here. If infringing a patent by selling an infringing product constitutes advertising injury whether or not the buyer purchased it because he saw an advertisement, then a great many acts which have at best a remote

relationship to advertising content would be covered. The advertising injury policy would cover any tortious acts of the seller just because the product was advertised. Sellers would not need policies covering product liability, personal injury, errors and omissions or a number of other risks for which specific policies are customarily purchased.

Since *Bank of the West,* numerous courts have adopted its reasoning and, examining standard CGL policies, have held that patent infringement is not covered by advertising injury. *See, e.g., Everest & Jennings, Inc. v. American Motorists Ins. Co.,* 23 F.3d 226 (9th Cir.1994); *Iolab Corp. v. Seaboard Sur. Co.,* 15 F.3d 1500 (9th Cir.1994); *Aetna Casualty & Sur. Co. v. Superior Court,* 19 Cal.App. 4th 320, 23 Cal.Rptr.2d 442 (Cal.Ct. App.1993). These cases make clear that there must be a proximate causal connection between the advertising activity and the patent infringement, and further, that the alleged "advertising activity" which causes the injury must occur in the very act of advertising. While we acknowledge that piracy and unfair competition might be construed as encompassing the idea of patent infringement, we find the rationale of *Bank of the West* and its progeny persuasive and consistent with the Illinois appellate court decision in *Florists' Mutual.*

In addition, we note that, although we are not bound by the court's decision in *Bank of the West,* it appears that most courts which have examined this issue have reached the same conclusion. As the court in *Curtis Universal, Inc. v. Sheboygan Emergency Medical Services, Inc.,* 844 F.Supp. 492 (E.D.Wis.1994), stated:

> Orange Cross argues that *Bank of the West* is irrelevant because it is an interpretation of California law. This overstates the case. *Bank of the West* may not be authoritative, but it is hardly irrelevant. No Wisconsin court has addressed the *Bank of the West* issue, and virtually every court that has addressed it ruled against coverage. Thus, while this Court must restrict itself to a prediction of how the Wisconsin Supreme Court would decide the case, it may, when doing so, give serious consideration to the sound reasoning

and virtually unanimous trend of courts outside Wisconsin.

*Id.* at 501.

The plaintiffs have failed to show how the patent infringement in this case could have been caused by advertising activity, or that it arose out of advertising activity. Instead, the complaint alleges that the infringement was caused by the manufacture, use, and sale of an allegedly infringing product. In fact, advertising is mentioned, very briefly, and only in the count alleging inducing infringement. The plaintiffs simply have failed to establish any causal connection between the patent infringement alleged in this case and any advertising activity, despite the fact that the infringing product was advertised and may have been sold, in part, through advertising. We agree with the majority of the courts which have considered the issue that patent infringement is not advertising injury and does not give rise to advertising liability under the policies here involved.

This rationale also applies to the inducing infringement claim. While inducing infringement may involve advertising activity, that does not appear to be true here. The complaint barely discusses Arlasky's advertising activities, and then only mentions that the infringing product was advertised pursuant to Arlasky's direction.

Because the plaintiffs have failed to demonstrate any causal connection between the alleged patent infringement and any advertising activity, we find that the Insurers and Great Southwest are not obligated under their policies to defend or indemnify. Summary judgement on this ground is therefore appropriate.

### 2. *Breach of Duty to Cooperate*

 Intervening petitioners also claim that Arlasky has materially breached the cooperation clause and, thus, summary judgment should also be granted in their favor on that ground. Illinois courts have long held that a material breach of a cooperation clause relieves an insurer of responsibility under the policy. *See Gallaway v. Schied,* 73 Ill. App.2d 116, 219 N.E.2d 718 (Ill.App.Ct.1966); *Safeco Ins. Co. v. Treinis,* 238 Ill.App.3d 541,

179 Ill.Dec. 547, 606 N.E.2d 379 (Ill.App.Ct. 1992). An insurer asserting a breach of the cooperation clause has the burden of proving it. *See M.F.A. Mut. Ins. Co. v. Cheek,* 66 Ill.2d 492, 496, 6 Ill.Dec. 862, 864, 363 N.E.2d 809, 811 (Ill.1977). An insurer must establish that it exercised a reasonable degree of diligence in seeking the insured's cooperation and that the refusal to cooperate was willful. *See, e.g., Mazzuca v. Eatmon,* 45 Ill.App.3d 929, 932, 4 Ill.Dec. 518, 520, 360 N.E.2d 454, 456 (Ill.App.Ct.1977). In addition, although the insurers claim that failure to assist in trial preparation is prejudicial *per se,* the Illinois Supreme Court has held that an insurer alleging noncooperation must show substantial prejudice resulting from the breach. *Cheek,* 6 Ill.Dec. at 866, 363 N.E.2d at 813.

■ All parties concede that Mr. Arlasky has apparently disappeared. His attorney was last in contact with him in December 1992. Intervening petitioners have hired an investigator to find Arlasky in an attempt to advise him, through conversation and by mail, of the importance of cooperating with his attorney. The investigator was unable to find him, but did discover that he was using another person's social security number and was having his mail forwarded to a non-existent post office box.

We are persuaded that the insurance companies have made substantial efforts to locate Arlasky. Further, given the investigator's findings, it appears that Arlasky's non-cooperation is willful. The only remaining question, therefore, is whether Arlasky's failure to cooperate has been prejudicial to the insurance companies. The failure of Arlasky to assist in trial preparation since at least December 1992 has apparently prejudiced the insurers. Very little discovery has been conducted—the only deposition of Arlasky was taken as part of the earlier Chapman litigation, not this case. Expert witnesses have been retained for the trial; but because the plaintiffs have alleged willful conduct on the part of Arlasky as a basis for treble damages and because the inducing infringement claim requires proof of his specific intent, the failure of Arlasky to assist in preparing a defense and to testify necessarily

prejudices the insurers. From the statement of undisputed facts, it appears that an inference of willfulness can be drawn. Without Arlasky's testimony, it will be virtually impossible to rebut that inference, thereby substantially prejudicing the intervening insurance companies. Therefore, summary judgment can also be granted on the ground of failure to cooperate.

3. *Breach of Duty to Provide Timely Notice*

■ Intervening petitioners additionally urge that Arlasky materially breached the insurance contract by failing to provide timely notice of this lawsuit. In Illinois, the prompt notice requirement is a condition precedent to coverage and late notice has been determined as a matter of law to nullify coverage. *INA Insurance Co. v. City of Chicago,* 62 Ill.App.3d 80, 83, 19 Ill.Dec. 519, 522, 379 N.E.2d 34, 37 (Ill.App.Ct.1978). Factors which courts consider in determining the validity of a late notice claim are: (1) if there is a justifiable excuse for any delay; (2) whether there has been a showing of actual prejudice; and (3) the length of time in filing the notice. *See Illinois Valley Minerals Corp. v. Royal Globe Ins. Co.,* 70 Ill.App.3d 296, 299, 26 Ill.Dec. 629, 631, 388 N.E.2d 253, 255 (Ill.App.Ct.1979). In Illinois, the insurers apparently do not have to establish actual prejudice; "the issue is not whether the insurer has been prejudiced, but, rather whether reasonable notice has been given." *Illinois Ins. Guar. Fund v. Lockhart,* 152 Ill. App.3d 603, 608, 105 Ill.Dec. 572, 575, 504 N.E.2d 857, 860 (Ill.App.Ct.1987). "Where the giving of notice has specifically been made a condition precedent to a right of action against the insurer, any prejudice resulting from a delay in giving notice becomes immaterial." 105 Ill.Dec. at 576, 504 N.E.2d at 861, quoting *Equity General Ins. Co. v. Patis,* 119 Ill.App.3d 232, 236, 74 Ill.Dec. 846, 849, 456 N.E.2d 348, 351 (Ill.App.Ct.1983).

■ While the issue of whether timely notice was provided is typically a factual question for the jury to decide, where the facts are undisputed, the question of sufficiency of notice becomes a question of law. *See Brotherhood Mut. Ins. Co. v. Roseth,* 177 Ill.

App.3d 443, 448, 126 Ill.Dec. 669, 672, 532 N.E.2d 354, 357 (Ill.App.Ct.1988), *appeal denied*, 125 Ill.2d 563, 130 Ill.Dec. 478, 537 N.E.2d 807 (1989). In determining whether an insured has failed to give timely notice, we must examine all the facts and circumstances. *Barrington Consol. High School v. American Ins. Co.*, 58 Ill.2d 278, 282, 319 N.E.2d 25, 27 (Ill.Ct.1974). Further, while an insured is not required to anticipate and report every potential claim, an insured must report accidents or occurrences if a reasonable person would believe that a claim under the policy will be made. *See Barrington Consolidated*, 319 N.E.2d at 28.

 It has long been held that 35 U.S.C. § 271 allows patent owners to bring suit against both corporations and officers of corporations for direct infringement and inducing infringement. Officers of corporations may be held personally liable for direct patent infringement if the corporation was merely an alter ego of its officers or if a court decides that equity requires piercing the corporate veil. An officer may be held liable for inducing infringement if that officer "possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement." *Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990).

 Here, even viewing the evidence in the light most favorable to Arlasky, the nonmoving party, we conclude that he should have been aware of his potential liability for patent infringement or inducing infringement on or before January 6, 1987, when the patent office issued a reexamination certificate allowing the claim involved in this lawsuit. At the *very* least, Arlasky should have been aware of his potential liability on December 11, 1987, when the Riveras once again filed suit against Chapman Industries. According to the Uncontradicted Statement of Facts, the plaintiffs first gave notice of infringement on December 9, 1983, and filed suit against Chapman on January 2, 1985. That suit was dismissed without prejudice, but on December 11, 1987, plaintiffs refiled their suit. Plaintiffs filed this suit against Arlasky on November 5, 1990, after realizing that the default judgment against Chapman was uncollectible. The insurers were first given notice by Arlasky in February of 1991.

Prior to the reissue of the Rivera patent, Arlasky might have thought that the Rivera patent was invalid and therefore Chapman was not infringing it. However, given the fact that the Riveras previously had sued for patent infringement, Arlasky, as CEO and majority shareholder of Chapman Industries, should have been aware that he was potentially liable for patent infringement once the patent office reexamined the patent and if it found in favor of the Riveras as it did. He doubly should have been aware of his potential liability when the Riveras brought suit against Chapman. Arlasky has not provided any justifiable excuses for this delay of more than three years. We therefore find that he failed to provide timely notice, thus breaching the notice provisions of the insurance policies. Therefore, summary judgment is also warranted on this ground.

### 4. *Six-year Statute of Limitations*

In addition to the previous contentions, Great Southwest also urges that the patent statutes establish a six-year statute of limitations and, because all of Great Southwest's policies fall outside of the six-year period, this Court should enter summary or declaratory judgment in its favor. 35 U.S.C. § 286 provides:

> Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counter-claim for infringement in the action.

The Riveras filed this suit on November 5, 1990. Under 35 U.S.C. § 286, the plaintiffs, if successful, could recover damages only for infringing acts which occurred during the six years prior to the filing of the complaint, i.e., damages for acts which occurred after November 5, 1984. However, none of Great Southwest's policies were in effect during this period. It issued two commercial umbrella policies, the first effective from August 6, 1981 through August 6, 1982 and the second effective from August 6, 1982 through August 6, 1983. It also issued an excess

indemnity policy which was in effect from August 6, 1983 through September 6, 1984.

■ The plaintiffs attempt to avoid the effect of § 286 by urging that their suit against Chapman, which was filed on June 2, 1985 and refiled on December 11, 1987, "tolled" the statute of limitations. Under this argument, the plaintiffs contend that they may recover damages for all infringing acts which occurred after either June 2, 1979 or December 11, 1981.

In a case strikingly similar to the case before us, however, the Federal Circuit has held that § 286 is an absolute bar to claims for damages outside the limitations period and has specifically rejected the argument that § 286 can be tolled by the "other litigation" exception to laches. *A. Stucki Co. v. Buckeye Steel Castings Co.*, 963 F.2d 360, 363 (Fed.Cir.1992). In *Stucki*, the plaintiff won a patent infringement case against RDI in 1980 and judgment was entered on the jury's verdict. Subsequently, RDI filed a petition for bankruptcy. Concerned about RDI's ability to pay, Stucki then filed suit against RDI's president, Stuart Schwam, and Worthington Industries, Inc., a related entity. Worthington answered by stating that it was not the proper party. Stucki then moved to amend its complaint to include Buckeye, but upon learning that adding Buckeye would delay the trial, Stucki withdrew the motion. The district court then granted summary judgment against Schwam, but entered a directed verdict in favor of Worthington.

In 1988, Stucki filed a suit against Buckeye, alleging that Buckeye was jointly and severally liable, along with Schwam and RDI, for patent infringement and other claims. The district court granted summary judgment in favor of Buckeye on the patent infringement claim on the ground that the suit was time-barred under § 286. The Federal Circuit affirmed. It also held that § 286 not only applied to claims for direct infringement, but also applied to claims for inducing infringement.

Here, plaintiffs first filed suit against Chapman and then later filed suit against Arlasky. While any amended complaints in the Chapman case probably would have re-lated back to the original Chapman complaint for the purposes of § 286, that is not what is in issue in this case. As the court held in *Stucki*, subsequent complaints filed against separate, though related, defendants do not relate back to complaints filed in prior cases. As a consequence, the plaintiffs cannot recover damages for any infringing acts which occurred prior to November 5, 1984.

Great Southwest did not issue any policies which were in effect after September 6, 1984. It is, therefore, entitled to summary judgment on the basis of the six-year statute of limitations.

### CONCLUSION

For all of the above reasons, summary judgment is granted in favor of the intervening petitioners Insurers and Great Southwest.