**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0370n.06

No. 19-1926

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

NATIONAL CONTINENTAL INSURANCE
COMPANY,

  Plaintiff-Appellee,

v.

NURBEK AIAZBEKOV; ROAD
CARRIERS, INC.,

  Defendants,

ZEF LJAJCAJ,

  Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jun 23, 2020
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF
MICHIGAN

OPINION

BEFORE: MERRITT, MOORE, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. Zef Ljajcaj was injured in a trucking accident and sued the other driver, Nurbek Aiazbekov, along with Aiazbekov's trucking company, Road Carriers, Inc., in state court. While that suit was pending, Aiazbekov fled the country. After Ljajcaj settled with Road Carriers, he obtained a $2.6 million default judgment against the missing Aiazbekov. This federal diversity case asks whether Road Carriers' insurer, National Continental Insurance Company, must pay that state-court judgment. National Continental says it need not pay because Aiazbekov, by fleeing the country, breached a provision in Road Carriers' insurance policy that required him to cooperate in the defense. The district court agreed, and we affirm.

I

Around 2:00 a.m. on October 19, 2016, Ljajcaj was driving his semitruck across Indiana's border into Michigan in the middle lane of Interstate 94. At the same time, Aiazbekov, driving a load of watermelons in another semi, attempted to merge onto the interstate from Michigan's Welcome Center. Aiazbekov suddenly stalled and "jackknifed" into the middle lane. He also did not have his lights on. While Ljajcaj saw Aiazbekov's truck jackknife, he could not avoid hitting the back of Aiazbekov's trailer. Ljajcaj says that he suffered head, back, and shoulder injuries that required multiple surgeries and caused lasting physical and mental harms. In July 2017, he brought a negligence suit against Aiazbekov and Road Carriers (the Illinois company that owned the truck) in Michigan state court.

National Continental, Road Carriers' liability insurer, paid for separate counsel to defend both Road Carriers and Aiazbekov. By January 2018, however, Aiazbekov had disappeared. His counsel made many efforts to reach him, including through a private investigator, but learned that Aiazbekov had fled to "Asia or Russia." Counsel moved to withdraw from the case in late May, which the state court allowed after a hearing. Two weeks later, Ljajcaj agreed to a $500,000 settlement with Road Carriers (which was half of the $1,000,000 coverage limit under National Continental's insurance policy). While Aiazbekov had disappeared by the time of this settlement (and likely would not pay any judgment), the settlement agreement did not release Ljajcaj's claims against Aiazbekov. Given Aiazbekov's absence (and his lack of counsel), Ljajcaj later obtained a default judgment of roughly $2.6 million against Aiazbekov.

Eighteen days after Aiazbekov's counsel withdrew and several weeks before Ljajcaj moved for a default judgment against Aiazbekov in the state-court case, National Continental brought this diversity action against Aiazbekov, Ljajcaj, and Road Carriers. National Continental sought a

declaratory judgment that, under the terms of its insurance policy with Road Carriers, it had no duty to defend or indemnify Aiazbekov in connection with Ljajcaj's pending state-court claims. That insurance policy, which otherwise covered Aiazbekov, states that National Continental "ha[s] no duty to provide coverage under this policy unless there has been full compliance with" certain duties in the event of a lawsuit—including a duty to "[c]ooperate with [National Continental] in the investigation or settlement of the claim or defense against the 'suit.'" National Continental argued that Aiazbekov had violated this "cooperation" provision by fleeing the country. Aiazbekov and Road Carriers both failed to answer the complaint. Ljajcaj counterclaimed, asserting that the cooperation provision was unenforceable under Michigan law and that National Continental must provide coverage for his state-court judgment against Aiazbekov.

At the summary-judgment stage, the district court first held that Illinois law, not Michigan law, applied to Road Carriers' insurance policy with National Continental. *See Nat'l Cont'l Ins. Co. v. Aiazbekov*, 2019 WL 2717221, at *2 (W.D. Mich. June 28, 2019). Applying Illinois law, the court next decided that Aiazbekov breached the insurance policy's cooperation provision because he did not cooperate even after National Continental took reasonable steps to locate him. *Id.* at *2–3. And the court found that his failure to cooperate prejudiced National Continental's defense. *Id.* at *3. It thus held that National Continental need not indemnify Aiazbekov for Ljajcaj's judgment against him. Ljajcaj now appeals, and we review the district court's decision de novo. *See Miller v. State Farm Mut. Auto Ins. Co.*, 87 F.3d 822, 824 (6th Cir. 1996).

II

Ljajcaj argues (1) that a Michigan law invalidates the cooperation provision on which National Continental relies to avoid its duty to indemnify Aiazbekov, (2) that, even under Illinois law, National Continental failed to prove that Aiazbekov breached this cooperation clause, and (3) that

National Continental should be estopped from raising this argument. Ljajcaj may have forfeited these arguments, but they fail on their merits in any event.

A

Ljajcaj asserts that a provision in Michigan's Financial Responsibility Act bars us from enforcing the cooperation clause in Road Carriers' insurance policy with National Continental. The provision states that "no failure of the insured to give any notice, forward any paper or otherwise cooperate with the insurance carrier, shall constitute a defense as against" a judgment creditor like Ljajcaj. Mich. Comp. Laws § 257.520(f)(1). The Michigan Supreme Court recently held that § 257.520 applies only to a subset of liability insurance policies. *Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 569–70 (Mich. 2012). We need not decide whether that subset would include Road Carriers' insurance policy because Illinois law—not Michigan law—governs this dispute.

To identify the state law that applies in a diversity case, we look to the choice-of-law rules of the state in which the district court sits—here, Michigan. *See Mill's Pride, Inc. v. Cont'l Ins. Co.*, 300 F.3d 701, 704 (6th Cir. 2002). The district court predicted that Michigan courts would apply Illinois law to decide whether Aiazbekov breached the cooperation clause in Road Carriers' insurance policy. *See Nat'l Cont'l*, 2019 WL 2717221, at *2. Yet Ljajcaj "barely mentions" this preliminary choice-of-law question in his opening brief, relegating it to a footnote at the end. *United States v. Johnson*, 440 F.3d 832, 845 (6th Cir. 2006). Even after National Continental highlighted the choice-of-law question in its response brief, Ljajcaj's reply said nothing more on the topic. Ljajcaj's lone footnote might not preserve any choice-of-law argument. *See id.* at 845–46; *cf. In re Anheuser-Busch Beer Labeling Mktg. & Sales Practices Litig.*, 644 F. App'x 515, 529 (6th Cir. 2016); *Nicholson v. City of Clarksville*, 530 F. App'x 434, 445 (6th Cir. 2013).

Regardless, we agree with the district court that Michigan courts would apply Illinois law under Michigan's choice-of-law rules. The Michigan Supreme Court follows the Restatement (Second) of Conflicts for contract cases like this one. *See Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698, 703 (Mich. 1995). Where, as here, the relevant contract contains no choice-of-law provision, the Restatement tells courts to ask which state "has the most significant relationship to the transaction and the parties under" the generic choice-of-law rules that apply in all suits. Restatement (Second) of Conflicts § 188(1) (1988). Those general rules direct courts to consider, among other things, the policies of the forum state and of other interested states, the expectations of the parties, and the need for predictability and uniformity. *See id.* § 6. The Restatement next identifies five factors for courts to consider specifically in contract disputes: "the place of contracting," "the place of negotiation," "the place of performance," "the location of the subject matter of the contract," and "the domicil, residence, nationality, place of incorporation and place of business of the parties." *Id.* § 188(2); *Mill's Pride*, 300 F.3d at 708–09.

Two cases—one from the Michigan Court of Appeals, the other from our court—show how these factors play out in insurance cases like this one. We begin with the Michigan case: *Farm Bureau Insurance Co. v. Abalos*, 742 N.W.2d 624 (Mich. Ct. App. 2007) (per curiam). There, a Michigan driver hit an Ohio driver while traveling on Ohio's roads, and the Ohioan responded with an Ohio tort suit. *Id.* at 625. The Michigan driver's insurer then sued both sides of this Ohio dispute in Michigan, claiming that the Michigander's failure to cooperate with the insurer eliminated the insurer's duty to indemnify that driver from all tort liability. *Id.* at 625–26. After recognizing that the case triggered contract (not tort) choice-of-law rules, the Michigan court explained that it must balance the expectations of the contracting parties (the insured and insurer) and of the two states. *Id.* at 626–27. When doing so it found that the "happenstance" that the

5

accident occurred in Ohio did not overcome the contractually rooted factors favoring Michigan law—namely, that the vehicle "was insured under a policy issued" in Michigan to Michigan residents. *Id.*

We turn to our case: *Mill's Pride.* There, a company brought a diversity suit against its insurer claiming that the insurer failed to indemnify it against business-tort claims. 300 F.3d at 703. The insurer responded that it had no duty to indemnify the company because the company had breached the contractual provision requiring both cooperation with the insurer and notice before a settlement. *Id.* The underlying tort (or "occurrence") took place partially in Michigan, but the company negotiated its contract with the insurer in Ohio and was required to report potential claims to the insurer in that state. *Id.* at 706, 708. We found that Michigan courts would apply Ohio law on these facts. *Id.* at 708–11. When doing so, we opted for more of a bright-line rule. *Id.* at 710–11. The suit involved contractual provisions detailing the insured's duty to cooperate with the insurer, not those governing the insurer's coverage of third-party claims. *Id.* We thought a uniform "rule of nation-wide effect"—not a state-by-state rule that turned on where a claim occurred—should govern these types of provisions delineating the parties' duties to each other. *Id.*

These cases forecast which state's law should apply here: Illinois's. Like *Abalos* and *Mill's Pride*, this case concerns an insured's duty to cooperate in the defense of a lawsuit. And Ljajcaj does not dispute any of the contract-related factors that the district court recited. Illinois was the place of negotiation and the place of contracting. Restatement (Second) of Conflicts § 188(2)(a)–(b). The subject matter was in Illinois, given that Road Carriers is an Illinois company with its fleet there. *Id.* § 188(2)(d). Illinois was the "principal place of risk." *Abalos*, 742 N.W.2d at 626. Road Carriers is domiciled in Illinois, whereas no contracting party is domiciled in Michigan. Restatement (Second) of Conflicts § 188(2)(e). And Illinois was the primary place of performance

(although it would occur wherever Road Carriers' trucks travelled). *Id.* § 188(2)(c). As in *Abalos*, the relevant Restatement factors favor the state of contracting, not the state where the accident occurred. *Abalos*, 742 N.W.2d at 626–27. And as in *Mill's Pride*, uniformity concerns favor that state too. When determining the duties that Road Carriers and Aiazbekov owe National Continental, "one rule of nation-wide effect" should apply. *Mill's Pride*, 300 F.3d at 711. Illinois law thus applies here.

In his lone footnoted response to this analysis, Ljajcaj argues that Michigan has an interest in applying its law to allow a Michigan citizen to enforce a Michigan judgment from a Michigan accident. But he relies on a decision using Michigan's choice-of-law rules for *tort* claims. *See Hall v. Gen. Motors Corp.*, 582 N.W.2d 866, 868 (Mich. Ct. App. 1998). Michigan law treats insurance policies as *contracts*. *See Titan*, 817 N.W.2d at 567. That means this suit is "strictly a contract action" governed by contract choice-of-law rules. *Abalos*, 742 N.W.2d at 626. No matter how a tort analysis might play out, the contract rules favor Illinois.

B

Even under Illinois law, Ljajcaj next argues, National Continental failed to establish that Aiazbekov breached his duty to "[c]ooperate with [the insurer] in the . . . defense against the 'suit.'" This claim faces an immediate obstacle: Ljajcaj did not raise an argument under Illinois law in the district court. National Continental's summary-judgment motion argued that it was entitled to judgment under Illinois law. Yet Ljajcaj did not address that argument—or cite a single Illinois case—in any of his three summary-judgment briefs. He instead took his chances on winning the debate over whether Michigan law applied. Even his motion for reconsideration—filed after the district court ruled that Illinois law governs—focused only on Michigan law. Ljajcaj thus did not preserve the Illinois-specific arguments he raises on appeal. "[T]he failure to present an

issue to the district court forfeits the right to have the argument addressed on appeal." *Vance v. Wade*, 546 F.3d 774, 781 (6th Cir. 2008) (citation omitted).

We have "on occasion" excused this type of forfeiture "when the rule would produce a plain miscarriage of justice." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) (citation and internal quotation marks omitted). But Ljajcaj's forfeiture is hard to ignore because he does not ask us to excuse it. His opening brief raises Illinois-based arguments without even acknowledging that he did not make these arguments in the district court. National Continental thus pointed out Ljajcaj's forfeiture in response. Yet even in reply Ljajcaj says nothing on this preservation issue. In effect, then, Ljajcaj not only forfeited his Illinois-law arguments in the district court, he forfeited any argument that he did *not* forfeit these arguments in this court. *Cf. Johnson*, 440 F.3d at 845–46.

In any event, we again agree with the district court on the merits. *See Nat'l Cont'l*, 2019 WL 2717221, at *2–4. Under Illinois law, an insurer must meet two requirements to enforce a cooperation provision. The insurer must first show that it "exercised a reasonable degree of diligence in seeking the insured's participation and that the insured's absence was due to a refusal to cooperate." *Founders Ins. Co. v. Shaikh*, 937 N.E.2d 1186, 1193 (Ill. Ct. App. 2010). The insurer then must prove that the failure to cooperate "substantially prejudice[d]" it. *M.F.A. Mut. Ins. Co. v. Cheek*, 363 N.E.2d 809, 813 (Ill. 1977). National Continental satisfies both factors.

Start with diligence. *See Nat'l Cont'l*, 2019 WL 2717221, at *3. Illinois courts have required insurers to undertake relatively rigorous efforts to satisfy this requirement. They have found a lack of diligence when insurers merely called a few times or mailed a few letters over a short period. *See Am. Access Cas. Co. v. Alassouli*, 31 N.E.3d 803, 835–39 (Ill. Ct. App. 2015); *see also Lappo v. Thompson*, 409 N.E.2d 26, 28 (Ill. Ct. App. 1980); *Johnson v. Wade*, 365 N.E.2d 11, 14

(Ill. Ct. App. 1977); *Mazzuca v. Eatmon*, 360 N.E.2d 454, 457–58 (Ill. Ct. App. 1977). *Alassouli*, for example, held that an insurer did not exercise reasonable diligence when its "efforts spanned 13 days and included 5 phone calls and a skip trace." 31 N.E.3d at 806. The court noted that the insurer "expended minimal effort to contact [the insured] personally and much more could and should have been undertaken to procure his cooperation," including mailing the insured letters or personally visiting his last known address. *Id.* at 813. Even hiring a private investigator was not enough, *Mazzuca* found, when the investigator spent only a few hours trying to locate the insured and did not follow up on obvious leads. 360 N.E.2d at 457.

Illinois courts, by contrast, have found that insurers were diligent when they undertook expansive searches. *See Founders*, 937 N.E.2d at 1189–91, 1195–96; *Gallaway v. Schied*, 219 N.E.2d 718, 719–23 (Ill. Ct. App. 1966), *abrogated on other grounds by Cheek*, 363 N.E.2d at 812–13; *see also Davila v. Arlasky*, 857 F. Supp. 1258, 1264 (N.D. Ill. 1994). In *Founders*, for example, after the insurer learned that the insured's telephone service had been disconnected and mail returned as undeliverable, the insurer began searching databases and visiting last-reported addresses. 937 N.E.2d at 1196. The insurer then hired an outside search firm, which identified possible new leads that ultimately turned out to be dead ends. *Id.* All told, these efforts showed that it was the insured's desire not to be found, not the insurer's failure to look for him, that led to the lack of cooperation. *Id.*

This case is more like *Founders* than *Alassouli*. Aiazbekov's counsel began his representation in September 2017, but Aiazbekov stopped responding to his communications in January 2018. Over the next several months, counsel made continued efforts to contact Aiazbekov through U.S. mail, certified mail, telephone, and text message. He asked for assistance tracking Aiazbekov down from an acquaintance who had been helping Aiazbekov during the suit. But that

acquaintance reported that Aiazbekov had not returned his calls, that other members of the community had not heard from him, and that Aiazbekov was "out of reach." Counsel then hired a private investigator to find Aiazbekov. This investigator conducted a computer search for property records, court records, marriage records, prison records, bankruptcy records, and social-media accounts associated with Aiazbekov. The search returned two possible residences. An investigator went to those addresses. At one, the current resident had moved in six months before and did not know Aiazbekov, although he did occasionally receive mail addressed to him. The property manager also did not recognize Aiazbekov's name. At the other residence, a "former friend" of Aiazbekov's said that Aiazbekov had never lived at the address and that he had "moved back to Asia or Russia" months before. These facts show that "Aiazbekov's counsel employed every available means to contact Aiazbekov and exhausted every lead that was generated through the investigation into Aiazbekov's whereabouts." *Nat'l Cont.*, 2019 WL 2717221, at *3. National Continental thus satisfies the diligence element as a matter of law.

Turn to prejudice. To establish that the insured's failure to cooperate substantially prejudiced an insurer, the insurer must "demonstrate that it was actually hampered in its defense." *Cheek*, 363 N.E.2d at 813. That is so, the Illinois Supreme Court has said, because insurance policies are designed not just to protect the insured but also to protect injured third parties. *See id.* Illinois courts have found prejudice when a missing insured was "the only known witness to the collision" apart from the injured party. *Founders*, 937 N.E.2d at 1196; *Am. Country Ins. Co. v. Bruhn,* 682 N.E.2d 366, 372 (Ill. Ct. App. 1997). And they have found it when a missing insured's intent was relevant to the claim. *See Davila*, 857 F. Supp. at 1264. As the Illinois Supreme Court said before *Cheek*, "[w]ithout the presence of the [insured] and his aid in preparing the case for trial, the insurance company is handicapped, and such lack of cooperation must result in making

the action incapable of defense." *Schneider v. Autoist Mut. Ins. Co.*, 178 N.E. 466, 468 (Ill. 1931). At the same time, Illinois courts have found no prejudice from a missing insured when the insurer undertook an inadequate investigation even to find him. *See Alassouli*, 31 N.E.3d at 814.

Here, as in *Founders*, National Continental's defense "was plainly and substantially prejudiced" by a key witness's absence. 937 N.E.2d at 1196; *see Davila*, 857 F. Supp. at 1264. Aiazbekov's counsel moved to withdraw under Michigan's rules of professional conduct (a motion the state court granted) precisely because Aiazbekov's complete absence had made counsel's representation "unreasonably difficult." *See* Mich. R. Prof. Conduct 1.16(b)(5); *cf. Progressive Cty. Mut. Ins. Co. v. Trevino*, 202 S.W.3d 811, 817–18 (Tex. Ct. App. 2006). His absence led to a default judgment without any defense either on comparative fault or on damages. *See Schneider*, 178 N.E. at 467. And Aiazbekov may have been able to provide favorable testimony, at least on the injuries that Ljajcaj appeared to suffer at the time of the accident. While, for example, Ljajcaj presented medical records of his injuries, the record also contains a contemporaneous police report that states Ljajcaj "reported no injuries" after the accident. By hindering his attorney's ability to defend him to the point where the court granted counsel's request to withdraw, Aiazbekov "handicapped" National Continental's defense to the point where it may enforce the cooperation provision. *Schneider*, 178 N.E. at 468; *see Founders*, 937 N.E.2d at 1196.

Ljajcaj's responses do not change things. On diligence, Ljajcaj faults National Continental for failing to take several additional actions. But National Continental took many steps that Ljajcaj claims it should have, including searching property records and social media. As for other actions (such as contacting employers), Ljajcaj identifies no caselaw suggesting National Continental needed to do more than it did under the circumstances: repeatedly call, text, and send mail to

11

Aiazbekov, hire a private investigator to conduct online searches of his records, and personally visit his possible residences. *Founders*, 937 N.E.2d at 1189–91, 1195–96.

On prejudice, Ljajcaj faults the district court for suggesting that Aiazbekov was the only other witness to the accident. He notes that, unlike in *Founders*, a police officer on the scene and two other witnesses could have provided testimony. But a police report existed in *Founders* too. *Id.* at 1188. And we cannot agree that a party's complete disappearance during a case—particularly when that party was a key witness—would make no difference to the outcome. *See Davila*, 857 F. Supp. at 1264; *see also Schneider*, 178 N.E. at 468. Ljajcaj also does not explain how National Continental could have prevented Aiazbekov's counsel from withdrawing or how it could have hired new counsel to represent an absent client. Regardless, Ljajcaj's criticisms of the district court's analysis come too late. If he thought he could show that National Continental was not prejudiced by Aiazbekov's disappearance, he could have attempted to do so in the district court. But again, he made no arguments under Illinois law there.

C

Ljajcaj lastly raises an affirmative defense against National Continental's claim that Aiazbekov breached the cooperation clause. Ljajcaj says that National Continental should be estopped from raising this meritorious claim because it violated its duty to defend Aiazbekov in the state suit when his lawyer withdrew after he disappeared. We disagree.

To begin with, Ljajcaj also forfeited this affirmative defense by failing to raise it in the district court. *See Vance*, 546 F.3d at 781. Indeed, the district court nowhere even addressed this estoppel argument. *See Nat'l Cont'l*, 2019 WL 2717221, at *2–4. And by raising estoppel for the first time on appeal, Ljajcaj prevented National Continental from introducing responsive evidence—such as evidence about its relationship to Aiazbekov's counsel and about whether counsel

acted independently in choosing to withdraw from the state suit after Aiazbekov disappeared. *Cf. Murphy v. Urso*, 430 N.E.2d 1079, 1085 (Ill. 1981); *Am. Fam. Mut. Ins. Co. v. W.H. McNaughton Builders, Inc.*, 843 N.E.2d 492, 498 (Ill. Ct. App. 2006).

Regardless, Illinois courts would not apply estoppel here. Under Illinois law, an insurer must defend a case if the case "potentially" falls within an insurance policy's coverage. *Crum & Forster Managers Corp. v. Resolution Tr. Corp.*, 620 N.E.2d 1073, 1081 (Ill. 1993). Yet Illinois law gives an insurer two options if it believes its policy does not apply. It can either (1) defend the case under a reservation of rights or (2) deny coverage and file a separate declaratory-judgment action (in state or federal court) seeking a declaration that the case did not trigger that coverage. *See State Farm Fire & Cas. Co. v. Martin*, 710 N.E.2d 1228, 1230–31 (Ill. 1999); *Westchester Fire Ins. Co. v. G. Heileman Brewing Co.*, 747 N.E.2d 955, 965 (Ill. Ct. App. 2001). "If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage." *Emp'rs Ins. of Wausau v. Ehlco Liquidating Tr.*, 708 N.E.2d 1122, 1135 (Ill. 1999). When the insurer takes the second path, its "duty to defend is suspended" once it *files* the declaratory-judgment action, so "the filing of the declaratory judgment action is . . . a means for the insurance company to avoid the estoppel in a subsequent suit[.]" *Those Certain Underwriters at Lloyd's vs. Prof'l Underwriters Agency, Inc.*, 848 N.E.2d 597, 601, 604 (Ill. Ct. App. 2006). The insurer need not successfully *obtain* the declaratory relief before it stops defending the insured in the underlying case. *See Martin*, 710 N.E.2d at 1231–32.

Although a declaratory-judgment action suspends the duty to defend (and the risk of estoppel), an insurer may not deny a defense and then wait indefinitely to bring a declaratory-judgment action. *Providence Hosp. v. Rollins Burdick Hunter of Ill., Inc.*, 824 F. Supp. 131, 135 (N.D. Ill. 1993). It must seek a declaration of rights in a "timely" manner after its denial of a defense. *Ehlco*,

708 N.E.2d at 1138. What constitutes a timely declaratory-judgment action? The Illinois Supreme Court has said that an action "is untimely as a matter of law" if the insurer waits to bring its declaratory-judgment action "until after the underlying action has been resolved." *Id.* Beyond that it has given no guidance. Other courts have adopted differing approaches. Some have said that estoppel will not apply so long as the insurer files the action "before the underlying lawsuit is resolved." *State Auto. Mut. Ins. Co. v. Kingsport Dev., LLC*, 846 N.E.2d 974, 986–87 (Ill. Ct. App. 2006) (citing cases). Others have "looked to whether a trial or settlement was imminent." *Id.* at 987 (citing cases). But the recent trend has been toward asking whether the insurer "filed its action within a reasonable time of being notified of the underlying suit." *Id.* (citing cases).

We think the Illinois Supreme Court would adopt the reasonable-time test, which "allows the court to decide each case according to its own facts and circumstances." *Id.*; *Pace Commc'ns. Servs. Corp. v. Express Prods., Inc.*, 18 N.E.3d 202, 214 (Ill. Ct. App. 2014); *Emp'rs Reinsurance Corp. v. E. Miller Ins. Agency, Inc.*, 773 N.E.2d 707, 719–20 (Ill. Ct. App. 2002); *cf. Hartley v. Berry*, 452 N.E.2d 97, 98–100 (Ill. Ct. App. 1983). Courts most often apply this test when insurers deny coverage from the *outset* of a case. In that context, they have asked whether an insurer filed the declaratory-judgment action within a reasonable time of notice of the suit. *See Nautilus Ins. Co. v. Bd. of Dirs. of Regal Lofts Condo. Ass'n*, 764 F.3d 726, 733 (7th Cir. 2014) (five-month delay reasonable); *Kingsport*, 846 N.E.2d at 988 (seven-month delay reasonable); *see also Ismie Mut. Ins. Co. v. Michaelis Jackson & Assocs., LLC*, 921 N.E.2d 1156, 1166 (Ill. Ct. App. 2009).

Here, National Continental followed the steps required by Illinois law. Unlike in most cases where the insurer disputes coverage from a case's outset, National Continental did not disclaim coverage from the start. Rather, it disclaimed coverage only after Aiazbekov disappeared and breached the cooperation clause. At that point, it could choose between defending the absent

client under a reservation of rights or filing a declaratory-judgment action. *See Martin*, 710 N.E.2d at 1230–31. It chose the latter course. We think it did so within a reasonable time. Aiazbekov disappeared around January 2018. Aiazbekov's counsel investigated for months to confirm that Aiazbekov had abandoned the case, moved to withdraw on May 22, and withdrew on June 11. National Continental filed this declaratory-judgment action on June 29, 18 days later. And the state court granted its final judgment in the underlying case on October 1. We believe that Illinois courts would find any delay here reasonable. *Cf. Nautilus*, 764 F.3d at 733; *Ismie*, 921 N.E.2d at 1166; *Kingsport*, 846 N.E.2d at 988. Because National Continental timely filed this declaratory action, estoppel does not prevent it from raising its defense that Aiazbekov breached the cooperation clause. *See Martin*, 710 N.E.2d at 1232.

As his only response, Ljajcaj argues that National Continental needed to successfully "obtain a ruling of no coverage . . . *before* the judgment was entered against Aiazbekov" in the state suit. The Illinois Supreme Court rejected this exact argument in *Martin*. It reasoned that a rule requiring insurers to successfully *obtain* a declaratory judgment before declining to defend an insured would "render the declaratory judgment option illusory." *Id.* An insurer would have "no realistic choice" but to defend the case "or risk entry of a default judgment for which it would subsequently be estopped from denying coverage." *Id.* The court thus held that estoppel does not apply "merely because the underlying case proceeds to judgment before the declaratory judgment action is resolved." *Id.* This rule applies here.

We affirm.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** I agree with the majority that Illinois contract law governs this action, but I would hold that National Continental Insurance Co. ("National Continental") is estopped from raising its defense to indemnification. National Continental ceded its non-cooperation defense by failing to seek a declaration excusing it of its duty to defend its insured *prior to* withdrawing as counsel. For that reason, I dissent.

National Continental hired counsel for Nurbek Aiazbekov to defend him in the underlying state-court action, per the terms of his insurance policy. *See* Appellee Br. at 28. A few months into the lawsuit, however, Aiazbekov stopped communicating with his counsel. R. 1-3 (Mot. to Withdraw at 5–6) (Page ID #98–99)). Counsel hired a private investigator to track him down and learned that Aiazbekov might have moved back to Asia or Russia. *Id.* at 6 (Page ID #99). When it became clear that Aiazbekov likely had absconded, counsel moved the court for permission to withdraw representation under Michigan Rule of Professional Conduct 1.16(b). *Id.* at 5, 7–8 (Page ID #98, 100–01). The state court granted Aiazbekov's attorney's motion to withdraw. R. 1-4 (State Court Order) (Page ID #130–32). Within a couple of weeks National Continental then filed a Complaint for a Declaratory Judgment in *federal* court to obtain a declaration that it has no duty to defend or indemnify Aiazbekov. *See* R. 1 (Compl. at 7) (Page ID #7). While both proceedings were pending, the state court entered a default judgment against Aiazbekov for Ljajcaj's injuries, awarding Ljajcaj $2,642,408.06 in damages. *See* R. 23-3 (Default J.) (Page ID #487).

National Continental argues that it was relieved of its obligation to defend or indemnify Aiazbekov once he breached the insurance policy's non-cooperation clause, which states that National Continental "ha[s] no duty to provide coverage under this policy unless there has been full compliance with the following duties: . . . [b](3) Cooperate with us in the investigation or settlement of the claim or defense against the 'suit.'" R. 1 (Compl. at 4–6) (Page ID #4–6) (quoting R.

16

1-2 (Ins. Policy at 53) (Page ID #70)). That conclusion is at odds with Illinois law. Ljajcaj is correct that National Continental breached its duty to defend Aiazbekov in the underlying action and, as a result, is estopped from asserting its non-cooperation defense in these proceedings.[1]

Under Illinois law, an insurance company owes two distinct duties to the insured: "(1) the duty to defend him if a claim is made against him; and (2) the duty to indemnify him if he is found legally liable." *Chandler v. Doherty*, 702 N.E.2d 634, 637 (Ill. Ct. App. 1998). "The oft-repeated refrain of Illinois insurance law is that an insurer's duty to defend is 'much broader' than its duty to indemnify." *Landmark Am. Ins. Co. v. Hilger*, 838 F.3d 821, 824 (7th Cir. 2016). If the facts alleged in the complaint even potentially fall within the policy's coverage provisions, the insurer has a duty to defend. *Id.* (citing *Crum & Forster Managers Corp. v. Resolution Tr. Corp.*, 620 N.E.2d 1073, 1079 (Ill. 1993); *Ill. Emcasco Ins. Co. v. Nw. Nat'l Cas. Co.*, 785 N.E.2d 905, 909 (Ill. Ct. App. 2003). "[T]he insurer taking the position that the complaint is not covered by its policy must defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage." *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005). It "may not simply refuse to defend the insured." *Emp'rs Ins. of Wausau v. Ehlco Liquidating Tr.*, 708 N.E.2d 1122, 1134 (Ill. 1999). "If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from

---

[1]It is true that Ljajcaj raises arguments based on Illinois law for the first time on appeal, but I would not apply forfeiture in this case. One, the issue here is purely a question of law. Two, Aiazbekov has absconded and likely is judgment-proof, so indemnification by National Continental is Ljajcaj's only real chance at relief. Therefore, if this court does not take up the issue, Ljajcaj will be denied a substantial justice because he will likely never recover any of the over $2 million award to which he is entitled. Three, the district court had the opportunity to consider Illinois insurance law at least from National Continental's perspective. And it was that body of law that formed the basis of the district court's opinion. For each of these reasons, I would decline to apply forfeiture and instead would reach the merits on this question.

raising policy defenses to coverage." *Id.* at 1135; *see also Country Mut. Ins. Co. v. Badger Mut. Ins. Co.*, No. 1-17-1774, 2018 WL 3235360, at *8 (Ill. Ct. App. June 29, 2018) (applying estoppel where insurer filed for a declaratory judgment relieving it of its duty to defend after default judgment was entered in the underlying action).

"The estoppel doctrine has deep roots in Illinois jurisprudence. It arose out of the recognition that an insurer's duty to defend under a liability insurance policy is so fundamental an obligation that a breach of that duty constitutes a repudiation of the contract." *Ehlco*, 708 N.E.2d at 1135. Estoppel is the "penalty designed to induce insurers to protect clients who are at risk, rather than to sit idly while the underlying suit proceeds." *Am. Safety Cas. Ins. Co. v. City of Waukegan*, 678 F.3d 475, 486 (7th Cir. 2012). The only significant limitation on estoppel is that it will not apply when the duty to defend has not been triggered, including "where the insurer was given no opportunity to defend; where there was no insurance policy in existence; and where, when the policy and the complaint are compared, there clearly was no coverage or potential for coverage." *Ehlco*, 708 N.E.2d at 1135. But "[o]nce the insurer breaches its duty to defend, . . . the estoppel doctrine has broad application and operates to bar the insurer from raising policy defenses to coverage, *even those defenses that may have been successful had the insurer not breached its duty to defend*." *Id.* (emphasis added). At that point, the only defense that can defeat estoppel is a conflict of interest between the insurer and the insured. *See Am. Fam. Mut. Ins. Co. v. Savickas*, 739 N.E.2d 445, 450–51 (Ill. 2000) (citing *Thornton v. Paul*, 384 N.E.2d 335, 343–45 (Ill. 1978)).

National Continental does not dispute that the underlying action was covered under Aiazbekov's policy or that it had an opportunity to defend Aiazbekov. It therefore had a duty to defend him. If National Continental wanted to assert a non-cooperation defense, it was required either to seek a declaration freeing it of its duty to defend or to continue representing Aiazbekov under

reservation of its rights. Instead, it simply withdrew, citing to rules of professional conduct. And predictably, the case ended in a default judgment against the abandoned Aiazbekov. Under Illinois law, National Continental is now estopped from raising its non-cooperation defense to coverage.

National Continental does not grapple with the estoppel doctrine, let alone the insurer's distinct and near-insurmountable duty to defend. Instead, it makes three unpersuasive attempts to get around Ljajcaj's argument entirely. National Continental's primary argument is that duties to defend or indemnify are beside the point—because Aiazbekov does not even qualify as an "insured." *See* Appellee Br. at 20–21. Aiazbekov ceased to be an insured, National Continental argues, when he breached the policy's cooperation clause. *See id.* at 16. The case that National Continental cites for this argument is *Founders Insurance Co. v. Shaikh*, 937 N.E.2d 1186 (Ill. Ct. App. 2010).

The Illinois Court of Appeals stated in *Shaikh* that, "[i]n order to establish breach of a cooperation clause, the insurer must show that it exercised a reasonable degree of diligence in seeking the insured's participation and that the insured's absence was due to a refusal to cooperate." *Id.* at 1193. The insurer must also prove that "it was substantially prejudiced by the insured's actions or conduct in regard to its investigation or presentation or defense of the case." *Id.* Based on the scenarios discussed in *Shaikh*, the district court here concluded that National Continental was reasonably diligent and substantially prejudiced. I do not doubt that National Continental was reasonably diligent and substantially prejudiced. But National Continental relies on Illinois contract law and is bound to follow it. That body of law does not permit National Continental to ask for absolution after the fact.

The analysis that National Continental asks us to perform is supposed to be done *before* counsel withdraws. Any defenses to coverage (other than a conflict of interest) are now estopped.

Even in *Shaikh*, National Continental's key case, the insurer was seeking exemption from its duty to defend *while the action was ongoing*—and not as some post-facto reprieve from liability after judgment had been entered. *See id.* at 1188–91. If National Continental wanted to head off liability, it should have raised its non-cooperation arguments in the state-court proceeding and either sought a declaration or defended Aiazbekov under reservation of rights. At its own peril, it withdrew as counsel and left Aiazbekov to meet his inevitable doom at default judgment. It cannot now complain.[2]

Even applying the reasonable-time test proposed by the majority, I disagree that Illinois courts would find National Continental's delay here reasonable. "[T]he 'reasonable time' test is a [] flexible approach that allows the court to decide each case according to its own facts and circumstances," including "the status of the underlying suit." *State Auto. Mut. Ins. Co. v. Kingsport Dev., LLC*, 846 N.E.2d 974, 987 (Ill. Ct. App. 2006). Courts should consider, for instance, when the insurance company received notice of the suit and whether trial or settlement was imminent. *Id.* at 987–88.

As the majority acknowledges, Illinois courts that have applied the reasonable-time test did so where the insurance company denied coverage from the outset and filed for a declaratory

---

[2]National Continental makes two additional arguments in the alternative. First, and amazingly, it claims that it never "actually withdrew from the defense of Aiazbekov." *See* Appellee Br. at 28. Aiazbekov's *attorney* withdrew, "[b]ut, while Aiazbekov's attorney was hired by National Continental [and] . . . [w]hile National Continental paid for that Counsel's work on behalf of Aiazbekov, [Ljajcaj] has presented no evidence that the decision by that attorney to withdraw was made by *National Continental*." *Id.* (emphasis added). That is meritless. Second, National Continental argues that Ljajcaj lacks standing to raise a duty-to-defend argument on Aiazbekov's behalf. *See* Appellee Br. at 26–27. In its view, Ljajcaj has standing only to argue for indemnification and has no personal stake in Aiazbekov's defense. But the entire purpose of estoppel is to protect *the injured party* where the insurer fails to defend the insured or to seek a declaration that excuses it from doing so. These backup arguments do not persuade.

judgment sometime after it learned of the lawsuit. In those cases, several months of delay were deemed reasonable. *See Nautilus Ins. Co. v. Bd. of Dirs. of Regal Lofts Condo. Ass'n*, 764 F.3d 726, 733 (7th Cir. 2014) (five-month delay reasonable); *Kingsport*, 846 N.E.2d at 988 (seven-month delay reasonable); *Ismie Mut. Ins. Co. v. Michaelis Jackson & Assocs., LLC*, 921 N.E.2d 1156, 1166 (Ill. Ct. App. 2009) (collecting cases). But here, National Continental had long been on notice of the lawsuit and the proceedings were accelerating toward a close. In *Kingsport*, the Illinois Court of Appeals distinguished a case in which an insurance company had already acknowledged a duty to defend from the case at hand, in which the insurance company "ha[d] consistently taken the position that it d[id] not have a duty to defend." 846 N.E.2d at 988. The former case was "inapposite." *Id.* There is a difference in the amount of delay that is reasonable for an insurer that has acknowledged a duty to defend and one that has not. Well into this case, counsel for Aiazbekov withdrew without first seeking a declaration that it may do so without penalty. I would hold that this delay was unreasonable.

I would reverse the district court's grant of summary judgment for National Continental and hold that it is estopped under Illinois law from raising its non-cooperation defense.